## Estate of Charles Tyson, deceased.   Appeal of Jacob Tyson, Executor of Charles Tyson, deceased.

*Orphans' court—Jurisdiction—Contest over real estate—Ejectment.*

While ejectment for real estate as such is the remedy in ordinary cases for heirs and devisees, yet where executors under a power in a will claim real estate, and their claim is disputed by the executors of the widow of the testator, the orphans' court has jurisdiction to entertain a petition in the nature of a bill in equity for a conveyance, and will not compel the executors of the husband to wait until the real estate is sold and turned into an account by the executors of the wife.

*Will—Bequest of personalty with power to consume.*

The rule that a bequest of personalty with power to consume, sell and dispose of carries an absolute and unrestricted title to it, although there is a gift over of what is left to other parties, is not a rule of law, but a rule of construction in aid of discovery of testator's intent, and it will be applied only where the legatee has used and appropriated the property in an honest exercise of the discretion with which the testator has clothed him. He will not be permitted to make use of the mere form to defeat or evade the true intent, and pervert the gift to a different purpose. Thus, a legatee who has not used or consumed the property during life will not be permitted by will to give it to persons other than those designated by the testator.

*Testator's intent.*

The intent of the testator which is to be discovered and carried out means his actual personal intent, not a mere conventional intent inferred from his use of any set phrase or form of words.

Argued Feb. 1, 1899.   Appeal, No. 427, Jan. T., 1898, by Jacob Tyson, from decree of O. C. Montgomery Co., dismissing petition for citation.   Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ.   Reversed.

Petition for citation.

SWARTZ, P. J., found the facts to be as follows

The executor of Charles Tyson alleges that certain personal property in the possession of Mary Tyson at her death, or standing in her name at her death, is the property of the estate of Charles Tyson, and that certain real estate, the record title of which is in the name of said Mary Tyson, is also the property of the estate of Charles Tyson.

1. Charles Tyson at his death was the owner of personal prop-

erty of the appraised value of $5,982.11. This consisted of bonds, bank stock, crops and farming implements. He was also the owner of a farm and several other tracts of land. ·

2. All the personal property was assigned, transferred and set over to the widow, Mary Tyson, by the executors of Charles Tyson. The bonds and bank stock were put in her name. She "released and discharged the executors from all and further liability and administration of said personalty."

3. The widow in 1887 sold one of the tracts of land for the consideration of $1,015. The residue of the real estate consisting of the farm, a small tract of ninety-four and one half perches and a messuage and lot of 120 perches, she sold to her brother, on March 27, 1897. The consideration for the deed was, cash $2,500, and two mortgages aggregating $11,500. On April 17, 1897, the brother conveyed back said real estate to his sister, the said Mary Tyson, the consideration named being $14,000.

4. The widow, Mary Tyson, died testate on June 6, 1897, having survived her husband nearly eleven years. She disposes of all her property by her will. In the direction to her executors she uses the following language: "Giving and granting unto them full power and authority to sell and convey all my real and personal estate absolutely, including all the real and personal estate late of my deceased husband, Charles Tyson, and which he devised and bequeathed to me absolutely under the terms of his last will and testament."

5. At the time of her death she was still in possession of the bank stock standing in her name. The real estate conveyed to the brother and by him conveyed back to her, also stood in her name at her death.

6. The petitioner, the executor of Charles Tyson, contends that the widow, Mary Tyson, took but a life estate in this bank stock and in the real estate of her husband. The respondents, the executors of Mary Tyson, and legatees under her will, claim on the other hand that the widow, under the will of her husband, took an absolute estate in the property standing in her name at the time of her death.

7. There is nothing before us from which we can determine what became of the railroad bonds, the crops and farming implements or the proceeds of the tract of land sold for $1,015. The inventory filed in her estate indicates that all this property

was used, expended or disposed of by her in her lifetime. The assets of her estate, as shown by the inventory, consists of twenty-nine shares of bank stock (being five less than at the time of the transfer to her) and other personalty appraised at $157.

8. The petitioner asks that the personal property, consisting of the bank stock, be transferred and delivered to him for the purpose of administration on the estate of Charles Tyson, that the executors of Mary Tyson be restrained, by writ in the nature of an injunction, from selling or disposing of the real estate aforesaid, and be compelled to convey the same to the petitioner.

9. The will under which the controversy arises reads as follows:

"First I order and direct that all my just debts of whatsoever nature and my funeral expenses be fully paid and satisfied as soon as conveniently can be after my decease and after payment of my just debts and expenses as aforesaid I order and direct as follows:

"(a) In case I should depart this life before my wife Mary I give and bequeath unto her the whole of my estate Real and Personal and to have the same and use it at pleasure for her sole use as fully largely and amply to all intents and purposes as I myself could or might have done in my Lifetime with full power at any time to sell or dispose of any part or the whole of the same and also power and authority to collect all outstanding monies of whatsoever nature or kind and to be exclusively for her use and disposal and also for the selling of any personal property or transfering of any stock of whatsoever nature or kind, and to do all and whatsoever may be necessary to be done in the selling and transfering of any stock or personal property and to vest full title therof in the purchaser or purchasers.

"(b) If my wife Mary should think at any time that it would be to her advantage to sell any part or the whole of my Real estate during her natural Lifetime, she can do so, either at public or private sale and make and execute good and lawful deed or deeds of conveyance to the purchaser or purchasers thereof, to be as valued good and as effectual in Law as if I had made and executed the same in my Lifetime and to vest full title in the purchaser or purchasers thereof and my wife Mary shall have the proceeds of such sale at her own disposal.

" (c) There shall be no disposal made of my estate or any part thereof by my executors hereinafter named during the Lifetime of my wife Mary. The management controle and proceeds thereof shall be reserved for and to the sole use of my wife Mary during her natural Lifetime—after the decease of both me and my wife Mary I order my executors hereinafter named or the survivors of them to sell my personal property if any shall remain and also sell my Real estate if any shall remain either at public or private sale—vesting in them full power and authority to execute and deliver good and Lawful deed or deeds to the purchaser or purchasers thereof, to vest full title in the purchasers theirof and to be as good and effectuael in Law as if I myself had made and executed the same in my Lifetime, and after payment of my just debts and expenses as aforesaid I order and direct that one equal one half of my estate shall be divided among my Brothers and sisters share and share alike, one equal one half of my estate shall be divided among my wife Mary Brothers and sisters share and share alike.

" (d) In case any of my Brothers or sisters or of my wife Mary's Brothers or sisters should be deceased at the time of making said distribution and having Left issue such distrebutive share shall be devided among such issues, share and share alike."

By a codicil he gives and bequeaths, to trustees, $2,000, after the death of his wife, to erect a building on the cemetery lot which he conveyed to the trustees in his lifetime. He also gives to said trustees $1,000 after the death of his wife, the interest thereof to be used in keeping in repair the building and fencing on the cemetery lot.

In a second codicil he directs the share of his wife's sister, Susanna, to be put in trust for her.

By a third codicil he makes a change in the executors' names, one of the executors appointed by the will having died in the lifetime of the testator.

The court dismissed the petition.

*Error assigned* was the decree of the court.

*N. H. Larzelere*, with him *William F. Dannehower*, for appellant.—The orphans' court had full and exclusive jurisdiction

of both subject-matter and parties: Tyson v. Rittenhouse, 186 Pa. 137; Dundas's App., 64 Pa. 325; Philips v. Railroad, 107 Pa. 468; Miskimin's App., 114 Pa. 530; Linsenbigler v. Gourley, 56 Pa. 166; Campbell's App., 80 Pa. 298; Johnson's App., 114 Pa. 132; Odd Fellows Savings Bank's App., 123 Pa. 356; Watts's Est., 158 Pa. 1; Lafferty v. Corcoran, 180 Pa. 309.

The construction of this will given by the court below defeats testator's intentions.

If the earlier clauses in the will stood alone unquestionably the widow would have taken both personal and real estate absolutely, because the language was broad enough to cover an absolute gift. But when we take the latter clauses, together with the codicils, it is so evident that testator only intended an estate for life in his widow, and that she should not be restricted to income alone, if insufficient to keep her, as to be beyond question. He did not intend her to create an estate in herself to will away at her death. The careful provision made to equalize the remaining estate at her death between her relatives and his own, manifestly shows that was not his intention.

Every will is to be construed from its four corners to arrive at the true intention of the testator. Decisions upon other wills may assist, but cannot control the construction: Byers's Est., 186 Pa. 404; Gross v. Strominger, 178 Pa. 64; McDevitt's App., 113 Pa. 103; Urich's App., 86 Pa. 386; Hinkle's App., 116 Pa. 490; Kennedy v. Kennedy, 159 Pa. 327.

*Montgomery Evans*, with him *Louis M. Childs*, for appellees. —The orphans' court has no authority to make a decree on a bill praying for a declaration of the rights of parties under a will: Willard's App., 65 Pa. 265.

Mary Tyson acquired title to the real estate and personal property of Charles Tyson, now in her name, either as a beneficiary under his will, vesting an absolute ownership in her in pursuance of the executed powers given, or she acquired title by virtue of the office of trustee under said will: Reiff's App., 124 Pa. 145; Sibbs v. Phila. Saving Fund Society, 153 Pa. 345; Slaymaker v. Bank, 103 Pa. 616; Byers's Est., 186 Pa. 404; Lininger's App., 101 Pa. 161; Mercur's Est., 151 Pa. 49; Heck's App., 170 Pa. 232; Jauretche v. Proctor, 48 Pa. 466; Second Reformed Presbyterian Church v. Disbrow, 52 Pa. 219; Good

v. Fichthorn, 144 Pa. 287; Fisher v. Wister, 154 Pa. 65; Jackson v. Robins, 16 Johnson, 537; Evans v. Smith, 166 Pa. 625, Barnet v. Deturk, 43 Pa. 92; Lawrence's Estate, 136 Pa. 354; Beck's App., 116 Pa. 547.

OPINION BY MR. JUSTICE MITCHELL, May 1, 1899:

This is in form a petition for a citation to account, but in substance it is a bill in equity by the surviving executor of Charles Tyson against the executors of Mary Tyson for the conveyance and transfer of property, real and personal, held by the respondents as part of the estate of their testator, but claimed by plaintiff as part of the estate of Charles Tyson. The court below dismissed the petition on the ground that as to the realty it was an ejectment bill and not within the jurisdiction of the court, and as to the personalty that the title was in Mary Tyson in her lifetime, and passed by her will to her executors.

The distinction as to jurisdiction between real and personal estate is not well taken. While ejectment for the real estate as such is the remedy in ordinary cases for heirs or devisees, yet in the present case the executors are charged by the will of Charles Tyson with the administration of his real estate, as well as his personalty, and the jurisdiction of the orphans' court to assist executors and administrators in obtaining possession and control of the decedent's assets is very extensive: Brooke's Appeal, 102 Pa. 150; Odd Fellows Savings Bank's Appeal, 123 Pa. 356; Lafferty v. Corcoran, 180 Pa. 309. In Mulholland's Est., 154 Pa. 491, the very basis of the order to pay over or secure the money was that it was the proceeds of decedent's real estate, and must be dealt with as such.

In the present case the property in controversy admittedly had been Charles Tyson's. At his death it passed into the possession of his widow, Mary, under his will. At her death her executors took possession of it as part of her estate, and appellant claimed it as part of Charles Tyson's. The title to it depends on the will of Charles Tyson, and both parties are in the orphans' court for supervision and control of their management of their respective trusts under his will and hers. It is a case for the jurisdiction of the orphans' court, and such was the decision when the case was here last year: Tyson v. Rittenhouse, 186 Pa. 137.

It is quite true that the courts of Pennsylvania have no jurisdiction to declare the construction of a will and rights under it by way of advice in limine, and without adverse litigants actually before them. It is not desirable that they should have. Notwithstanding some convenience, as remarked by SHARSWOOD, J., in Willard's Appeal, 65 Pa. 265, such practice would be contrary to the whole fundamental theory of our law under which courts do not advise but decide, and for decision there must be an actual contest. No man and no court can foresee the state of facts that may occur in the future, and ex facto oritur jus. In no class of cases is this truer than in those arising under wills. It is the unexpected, the condition of facts unforeseen, and therefore unprovided for, that gives rise to most of such litigation. And no judge can have failed to observe, not only in will cases, but in all others, how the knowledge and self-interest of parties actually contending for success conduces to precision and accuracy in the judicial result. Hence the very noticeable fact that with all the disadvantages of inexperience, want of learning, etc., on the part of counsel that sometimes embarrass a case, it is only in the rarest of instances that the true ground of determination fails to be developed in the argument. Nothing sharpens the wits for the presentation of every possible view like the interest of opposing parties dealing with known facts in a genuine contest for victory. It is that which gives the superior value to the decision of a court of even moderate ability, over the ex parte opinions of the most learned and experienced counsel.

The jurisdiction of the orphans' court in the present case is not contrary to these principles. What the petition seeks is the aid of the court to the executor in obtaining possession of the assets of his testator's estate. If his title were admitted, the cases already cited show that this is the proper court for him to come to. If the property were held on a clearly adverse and unconnected title, the holder could not be deprived of it except by the judgment of the ordinary common-law tribunals. But here it is admitted that the property was Charles Tyson's, but it is claimed that it passed to his widow under his will. As already said both estates are in the orphans' court, and that is the tribunal to settle this title. What the petitioner asks is not a construction of the will in advance and by way of advice, but the as-

sistance of the court to obtain what he claims as the property
of his testator. That is the jurisdictional fact, though in show-
ing title the petitioner must as an incident rely on his construc-
tion of the will. It has been already held that his bill will not
lie in the common pleas and that he must come into the orphans'
court for his remedy. In so doing he is not obliged to wait
until property that may be finally adjudged to be his is sold and
turned into an account by the executors of Mary Tyson. If
his claim is valid he should have the assistance of the court to
get the property now, and not be turned over to a surcharge of
the other executors hereafter.

Secondly, the court below held that by the will of Charles
Tyson the personalty passed to his widow absolutely, on the
ground that a bequest of personalty with power to consume,
sell and dispose of carries an absolute and unrestricted title to
it. That such is the general rule cannot be disputed. It is
not however a rule of law, but a rule of construction in aid of
reaching the intent of the testator, and where a different intent
is clear, the rule cannot be applied to defeat it. It was said by
SHARSWOOD, C. J., in Fox's Appeal, 99 Pa. 382, that "every
will is to be construed from its four corners to arrive at the
true intention of the testator. Decisions upon other wills may
assist but cannot control the construction." This is but one of
the hundreds of expressions of the cardinal rule in the inter-
pretation of wills, to find the testator's intent, and by that is
meant his actual, personal, individual intent, not a mere pre-
sumptive conventional intent inferred from the use of a set
phrase or a familiar form of words. " With the desire to reduce
to a minimum the perplexity and uncertainty inseparable from
the subject, courts have established certain artificial and arbi-
trary canons of construction, by which certain forms of expres-
sion are presumed to have certain meanings, and in doubtful
cases these presumptions are held to be decisive. But all these
canons are subservient to the great rule as to intent, and are
made to aid, not to override it. As in all such cases care is
required that tools shall not become fetters, and that the real
end shall not be sacrificed to what was intended only as the
means of reaching it: " Woelpper's Appeal, 126 Pa. 562. This
Court has in numerous cases pointedly indicated its determina-
tion to restore or preserve the cardinal rule as to intention in

its original and proper prominence, and to let every will stand on its own terms as every contract has always been construed to do.

Of the actual intent of Charles Tyson in his will the court below had no doubt, nor have we. The learned judge says, " he contemplated that (his widow) might make uses of the estate which would exhaust the whole, but he never intended that her appropriation of all the property and retention of it to the time of her death should give her the right to will it away, and defeat his disposition to the brothers and sisters." But, notwithstanding this clear view of the intent, the learned judge held that, as the testator had given an absolute estate in the first place, his intent to dispose by his own will of the unconsumed residue must fail. In this conclusion we think he gave too much weight to the form instead of the principle of the precedents. The testator's intent to give the personalty absolutely and without restriction is an inference or presumption from his use of language similar to that which in other cases has been held to have such meaning, and if the meaning here were doubtful this presumption would prevail. But looked at by itself to ascertain this individual testator's intent, it is perfectly clear that he did not mean to give the whole without restriction. On the contrary, his intention was to give her so much, and only so much, though possibly amounting to the whole, as should be necessary for her own comfort and enjoyment of life, and the residue, be it much or little, was to pass under his will. This disposition of his estate violated no rule of law. If he had left it to trustees with directions to sell and pay over to the widow from time to time such portions as she should in her own judgment require for her own use, there would have been no difficulty at all in its administration. But, the purpose being clear and lawful, it is the duty of courts to see that it is carried out and not defeated for mere inconvenience of form. The extent of the widow's consumption of the estate was within her own control. Her decision was without appeal, but it must have been honestly reached in accordance with the purpose the testator intended, and not merely colorably to defeat his will. She had power to carry out his intentions by sale, transfer and consumption of the proceeds in such a way as to leave nothing at her death. But a transfer with

intent not to consume for herself, but to preserve for others after her death, and to change the beneficiaries after her from those chosen by her husband to others of her own selection would be a fraud on the testator and his will. This is a question of fact to be determined by the court on the circumstances and the evidence in each case as it arises.

This result does not conflict with any of our decisions. They are very numerous, and we have examined them all with care. It is not necessary to go over them in detail, but is sufficient to say that they all rest on the single and indisputable principle of carrying out the intention of the testator. The intent being ascertained, it is not to be restrained or diverted by merely precatory words, as in Heck's Est., 170 Pa. 232; or by a particular intent repugnant to the general intent, such as an effort to control the legal incidents of the estate given, as in Jauretche v. Proctor, 48 Pa. 466, and Levy's Estate, 153 Pa. 174.

The general rule deduced in these cases is undoubtedly that a bequest of personalty with power to consume is presumed to be an absolute gift. But as already said this is not a rule of law but a rule of construction in aid of discovery of the testator's intent. The language of our Brother McCollum in Gross v. Strominger, 178 Pa. 64, is very appropriate here, "whatever was necessary for her support he intended she should have. If the income of the estate was sufficient to afford her a suitable maintenance it was his intention that the principal should go at her decease to the children and grandson. A construction of the privilege (to use the principal if necessary for her comfort) which makes it operate as an absolute gift to the wife of the residue of the estate would defeat the plain purpose of the testator. . . . . The mere fact that the securities which represent the balance of the estate were taken in her name has no particular significance. It was not within her power to defeat his intention respecting the remainder of the estate by any such act." In that case the money in controversy was originally the proceeds of real estate sold for payment of debts, but the principle of law is equally applicable in cases of personalty, and was so applied in the recent cases of Hinkle's Appeal, 116 Pa. 490, and Byers's Estate, 186 Pa. 404. It is always a question of intent.

The subject of the perversion of the power given by the use of the form, but with the purpose of defeating or evading its

intent, has not been directly discussed in our books heretofore, but the principle applicable plainly appears in two recent cases. In Lejee's Estate, 181 Pa. 416, testator left a sum to trustees to pay the interest to E. for life and at her death the principal to her children, or in default of children, over, but added that if E. "should at any time desire to increase her income by an annuity the trustees shall at her request invest the whole or any part of the said sum in an annuity for her." E. demanded the principal of the sum at once, and the court below decreed it to her on the ground that a gift for life with power of disposal amounted to an absolute gift, and as E. could direct the whole sum to be turned into an annuity for her benefit she could at her option take the money instead. But this Court reversed the decree, saying "it is obvious that this award, if sustained, will defeat the unmistakable purpose of the testator in creating the trust. . . . It was his beneficiary who was to determine whether there was occasion for increasing her income. . . . Certainly this was a concession to her by the testator of a liberal discretion, in full confidence however that she would exercise it in conformity with his clearly expressed intentions. . . . The possibility that the beneficiary may exercise the discretion given to her in regard to the purchase of an annuity, and thus wholly or partially destroy the interests in remainder, is not sufficient ground for dispensing with the exercise of it and awarding the whole sum to her. The exercise of the discretion in good faith may destroy these interests, but the mere existence of it cannot."

The other case, LaBar's Est., 181 Pa. 1, is to the same effect, though there the discretion of the beneficiary was less absolute, the testator's language being "if at any time she needs any part of the principal of the bank stock she is at liberty to receive it for her support and maintenance." She demanded the whole of it at once, and the court awarded it to her on the general principle hereinbefore discussed. But this Court reversed, the present chief justice saying the provision "was never intended to be used as a pretext for demanding and appropriating to her own use the entire corpus of the estate. . . . If such an unconscionable demand as that were acceded to it would not only defeat the manifest purpose of the testator but would operate as a fraud on his residuary legatees."

The test in all such cases is the good faith of the action of

the beneficiary. If it is an honest exercise of the discretion with which the testator has clothed him his action is conclusive, but he cannot be permitted to make use of the mere form to defeat or evade the true intent and pervert the gift to a different purpose.

The decree is reversed with directions to reinstate the petition and proceed with the case in accordance with the principles expressed in this opinion. Costs to be paid by the appellees.