*TOLEDO (CITY) v. ANDREW BROWN.

1. PERSONS SELLING THEIR OWN PRODUCTIONS NOT PEDDLERS OR HAWKERS.

Persons selling the products of their own raising and manu-
facture, designated in the proviso of R. S. 2669 (Gen. Code
3672), are not peddlers or hawkers against whom fees for li-
censes may be imposed.

2. DISCRIMINATIONS BETWEEN SELLERS OF THEIR OWN PRODUCTS AND
SELLERS OF PURCHASED PRODUCTS ARE REASONABLE.

Discriminations in license laws between persons selling products
of their own raising and those selling purchased products, are
not unreasonable. In the former case the selling is but an inci-
dent of the seller's business; in the latter it constitutes the
seller's business.

3. LICENSES JUSTIFIED BY EXERCISE OF POLICE POWER NOT TAX POWER.

Exactions of license fees in municipalities in Ohio are justified in
the exercise of police power rather than upon the right to tax
for revenue purposes.

4. LICENSE ISSUED BY AUDITOR UPON APPLICATION TO MAYOR NOT INVALID.

License issued by auditor upon application therefor to mayor is in
effect issued by the mayor and an ordinance so providing is not
thereby rendered invalid.

[Syllabus approved by the court.]

ERROR to common pleas court.

*Cornell Schreiber*, city solicitor, and *Alonzo G. Duer*, for
plaintiff in error:

As to the claim that the evidence fails to disclose the year
in which the offense was committed. *Foster* v. *State*, 19 Ohio
St. 415; *Corry* v. *Gaynor*, 21 Ohio St. 277, 280.

It is claimed that the affidavit upon which the warrant was
issued is defective, mainly for the reason that it is not specially
alleged "that the articles sold were not products of defendant's
own raising or manufacture." *St. Louis* v. *Meyer*, 185 Mo. 583
[84 S. W. Rep. 914]; 15 Am. & Eng. Enc. Law (2 ed.) 293;
*Toledo* v. *Hutchinson*, 55 Ohio St. 573 [45 N. E. Rep. 1043].

*Affirmed, no op., *Brown* v. *Toledo*, 83 O. S. 491.

As to constitutionality of the statute and the validity of the ordinance. *People* v. *Sawyer*, 106 Mich. 428 [64 N. W. Rep. 333]; *Rosenbloom* v. *State*, 64 Neb. 342 [89 N. W. Rep. 1053; 57 L. R. A. 922]; *State* v. *Stevenson*, 109 N. C. 730 [14 S. E. Rep. 385; 26 Am. St. Rep. 595]; *Marmet* v. *State*, 45 Ohio St. 63 [12 N. E. Rep. 463]; *Kansas City* v. *Overton*, 68 Kan. 560 [75 Pac. Rep. 549]; *State* v. *Montgomery*, 92 Me. 433 [43 Atl. Rep. 13]; *Sterling* v. *Bowling Green*, 26 O. C. C. 586 (5 N. S. 217); *Commonwealth* v. *Ober*, 12 Cush. (Mass.) 493; *Fisher* v. *Patterson*, 13 Pa. St. 336; *Raguet* v. *Wade*, 4 Ohio 109.

*Charles K. Friedman*, for defendant in error.

**WILDMAN, J.**

This case, in its inception, was a prosecution of the present defendant in error upon a charge of going about from place to place hawking and peddling and selling some articles of value without a license, in violation of an ordinance of the city of Toledo. He was convicted in the police court, fined five dollars and costs, and upon a proceeding in error instituted by him in the court of common pleas, this judgment of conviction was reversed, upon the sole ground, as stated by the judge of the court of common pleas, that the ordinance upon which the prosecution was based is invalid, and that the statute by virtue of which the ordinance was passed is unconstitutional. While the amount of the penalty imposed is very small, the questions involved are of such importance and wide interest as to demand from this court very careful consideration.

The proceeding here is in error to reverse the judgment of the court of common pleas. The evidence in the trial court was very brief, consisting of the testimony of one witness and some agreements or concessions, and they develop the fact that Andrew Brown at the time stated in the complaint against him was engaged in selling fish upon and across the streets of the city of Toledo, and that the case was covered by the ordinance found in the revised ordinances of the city, Section No. 580. I will briefly dispose of all the incidental questions substantially as in the court below. We agree with that court that the contentions of the defendant in error are not tenable unless he can

Toledo v. Brown.

sustain the one upon which the court of common pleas based its conclusion, to-wit, that the ordinance and the statute are invalid. In saying this, as in all that I may say with regard to this case, counsel may understand that I am voicing the judgment of a majority of the court only. I understand that Judge Kinkade is not quite prepared to give his concurrence to the views entertained by Judge Parker and myself.

The statute under which this ordinance was passed, R. S. 2669 (Gen. Code 3672), is under the caption "General licensing powers of council." There is another section of the statute in another chapter, R. S. 1536-100 (Gen. Code 3634) under the heading "General powers of municipalities," which gives to the council power to regulate the use of vehicles upon streets by means of license; but the section to which I first referred is the one under which this ordinance requiring a license from hawkers and peddlers and certain other persons selling commodities or articles of value was drawn and passed.

Reading only such portions of R. S. 2669 (Gen. Code 3672) as apply to the case at bar we find this language:

"The council of any city or village may provide by ordinance for licensing * * * hawkers, peddlers, * * * and hucksters in the public streets or markets, and, in granting such license, may exact and receive such sum of money as it may think reasonable; but nothing in this section shall be construed to authorize any municipal corporation to require of the owner of any product of his own raising, or the manufacturer of any article manufactured by him, license to vend or sell in any way, by himself or agent, any such article or product."

It is earnestly urged, and with a great deal of plausibility, that this language of the statute as to its own construction makes an unjust discrimination between two classes of vendors of things of value, and that it thereby violates certain sections of the constitution of Ohio. It is possibly claimed to be affected by the fourteenth amendment of the federal constitution also, although I do not know that this was specifically referred to in the argument. The ordinance in attempted compliance with this section of the statute is in some respects very crudely drawn, and we are not prepared to say that it may not be in

some of them invalid as in violation of the constitution, as vague
and uncertain in its terms, and also as not authorized by the
section of the statute to which I have referred. I may say
briefly, however, as to this matter, that in most of the respects
pointed out to us by counsel for defendant in error to sustain
the holding of the court below, these matters have no special
pertinency to the state of facts embodied in the complaint
against the defendant in error, Brown, or in the evidence ad-
duced upon the trial. As to the matter of the broad powers
of revocation of a license given to the mayor, the uncertainty
in the grading of the license as to the amount, and perhaps some
other matters evidencing the carelessness with which the ordi-
nance was drawn, they may be eliminated from it and still leave
those particular parts of it affecting the rights of the defendant
in error intact and unaffected. It is a principle so familiar as
to require no citation of authorities that an entire act or an en-
tire ordinance will not be invalidated by the unconstitutionality
of some of its parts, provided that it may fairly be inferred
that the legislature or the legislative body of the municipality
would still have made the enactment as to the other parts
without respect to those which are invalid.

The kind of traffic or business in which the defendant was
engaged is one very fully treated in the various text-books.
There is an extensive chapter in 21 Cyc. 364, entitled ''Hawkers
and Peddlers,'' in which we find definitions and numerous rules
and principles applicable to hawking and peddling. On page
365 we have the general statement:

''The licensing of hawkers and peddlers is within the
power of the legislature, provided that the statutes do not dis-
criminate between the citizens or the products of the several
states or foreign countries, and that the purpose is not merely
to benefit the resident merchants of a city. Furthermore, the
legislature has no power to discriminate in favor of citizens of
one county as against citizens of other counties in the same state,
or to require a license for the peddling of goods only where
manufactured in the state. So it cannot exempt sales to all
manufacturers and dealers residing or doing business in a certain
territory. But it is generally held to be allowable to exempt

Toledo v. Brown.

from the operation of the statute certain persons who peddle their own products or manufactures, such as farmers, butchers, and manufacturers.''

Certain other classes are mentioned which it may be allowable to exempt from the ordinances. It will be noted that in the section of our statute to which I have referred, there is no provision that certain classes shall be excepted from the operation of the act, but it is said that nothing in this section shall be construed to authorize any municipal corporation to require of the owner of any product of his own raising, etc., such license tax or fee. The courts have often construed this phrase, ''hawking and peddling,'' holding that a farmer who is marketing his own meat, or a manufacturer who is marketing his own work, is not a peddler or a hawker within the meaning of the terms used almost from time immemorial in the various enactments, not only in the states of this Union but also in Great Britain. On page 372 we have this statement:

''Irrespective of statute, persons who raise or produce what they sell, such as farmers and butchers, have been held not to be peddlers, although there is authority to the contrary. In many of the states the statute exempts from its operation any manufacturer, mechanic, nurseryman, farmer, butcher, or fish or milk dealer, who sells, either by himself or an employe, manufactured articles, wares or products.''

It should not be overlooked, however, that the ordinance of the city of Toledo before me imposes in terms a fee for a license, not only from peddlers and hawkers, but also upon persons generally who sell under certain circumstances articles of value. It covers not only peddlers and hawkers, but hucksters and it may possibly be construed as larger in its scope even than the embracing of these three classes. The language is:

''No person shall go from place to place in the city of Toledo upon or across the streets or other public places peddling, hawking, selling or offering for sale or exchange any goods, merchandise, products, fruits, vegetables, meat or other articles or things of value of any kind or character.''

Going back to the definition of a hawker and peddler, I

Lucas County.

find in 15 Am. & Eng. Enc. of Law (2 ed.) p. 293, this statement · in the text:

"A manufacturer, real worker, or manufacturing mechanic selling his own products is not considered a hawker and peddler, unless declared so by statute. In Great Britain this exemption extends to the children, apprentices, and servants of any real worker or maker of goods, usually residing in the same house with him, selling or seeking orders for wares made by him. In Canada this same exemption seems to exist except where changed by provincial legislation or local laws."

It may be inferred from what I have already read and said that legislation of the kind which we have under consideration is not a novelty in this country or in England. It is a subject which has been recognized and treated by legislative bodies and by courts for several centuries, and it has seemed to the majority of this court that to attempt to establish distinctions not recognized by the current of authority in this country and in Great Britain would be to legislate rather than to adjudicate; it would practically be attempting to establish a new rule of law in innovation of that which has been recognized by the current of the decisions and by the bodies authorized to legislate in the various states and in the mother country. As stated in 21 Cyc. the rule has not been universally adopted that a discrimination may be made between the selling of purchased products and the selling of products of one's own making or raising, but, not only from the statement in the text, but from numerous authorities which we have found time to examine, we are satisfied that the drift of authority is in favor of the recognition of such a discrimination as a just one. It is not, however, for the court to determine whether a legislative enactment is wise or unwise; whether an attempted classification is one which ought to have been made or not in the exercise of the discretionary powers of the legislative body, whether it be the legislature of a state or the council of a city. It is enough, as repeatedly held by the courts, to justify the upholding of an enactment, as a valid one, if the classification appears not to be capricious and arbitrary. Its expediency is for the enacting body, not the courts. We are

Toledo v Brown.

concerned with the powers, not the wisdom, of the legislature and council.

In *Marmet* v. *State*, 45 Ohio St. 63, 69 [12 N. E. Rep. 463], our Supreme Court has touched upon the question in considering an ordinance of Cincinnati, passed under a power to regulate the use of streets, the charge being that the plaintiff in error had used vehicles thereon without first obtaining a license. The ordinance was attacked, on the ground, as in the case at bar, that it made an unjust discrimination in favor of farmers marketing the product of their own farms. Judge Spear, in his opinion, says:

"It is urged, too, that the last clause of section 29 makes discriminations in favor of farmers marketing the products of their own farms, which are unjust, and that this invalidates the law. Such products ordinarily embrace the necessaries of life, without which the people, and, to some extent, domestic animals could not subsist, and it is not unfair to assume that this consideration had weight with the legislature in making the discriminations referred to. Other reasons may have been within the knowledge of that body which are not here disclosed, and do not occur to us. However, it is enough to say, that it is not shown that such discriminations are not within the legislative discretion. It may be added that absolute equality as to burdens, whether applied to taxes or other subjects of legislation, is not to be expected in our laws. The wisdom of man has not yet devised a system of equalizing burdens so perfect in its application and so thorough in its enforcement as to leave no room for adverse comment or criticism."

Although this specific feature of the Cincinnati ordinance is not referred to in the syllabus of the case, the question was one of the contentions and it was essential that it be considered and disposed of to arrive at the court's conclusion. It is said by counsel for defendant in error in the case at bar that *Marmet* v. *State, supra,* has been practically repudiated by the Supreme Court in later adjudications. We do not, however, think that it has been disturbed in this regard, if in any other, and we think that it may be taken still as the law of Ohio. We have found in other adjudications various statements of reasons for

Lucas County.

the making of such discriminations between on the one hand peddlers, hawkers and sellers of goods purchased by them or obtained in other ways, and on the other hand, the marketing of farm products or manufactured goods by the producer or maker.

In *Rosenbloom* v. *State*, 64 Neb. 342 [89 N. W. Rep. 1053; 57 L. R. A. 922], the syllabus contains, among others, this paragraph:

"There is such a real distinction between persons who go from house to house, and place to place, vending their own products, and those who sell in the same way the productions of others, that the legislature, acting on considerations of general policy, may make it the basis of classification for the purpose of taxation."

It was held in that case that the license fee was in the nature of a tax which was authorized under the constitution of the state of Nebraska. Whether it would be so authorized under the constitution of Ohio is a question which we do not consider, because it is probable, as it appears to the majority of the court, and perhaps to all, that licensing ordinances in this state are ordinarily based upon the general police power rather than upon a right to tax for the purpose of raising revenue. But it has seemed to me that the right to discriminate or classify in the manner in which a classification or discrimination was attempted by the legislature of Ohio and the council of the city of Toledo, may even better be justified in the exercise of police power than in that of the taxing power. On page 925 the judge, speaking for the Nebraska court, says:

"A further contention of counsel for defendant is that, by reason of the exceptions contained in Sec. 152, the law lacks the essential requirement of uniformity." "The real test," he adds, "of the validity of defendant's objection to this statute, is not whether the classification is wise and just, but whether the legislature acted arbitrarily, whether, without an adequate determining principle, it made a division of peddlers into two classes, and then sought to deprive one class of their constitutional right to the equal protection of the laws. If there is a genuine and substantial distinction between persons who go from house to house, and place to place, vending their own

Toledo v. Brown.

products, and those who sell in the same manner the productions of others, the classification is founded in the nature of things, and is therefore upon a basis everywhere recognized as lawful. Now, there is, in our opinion, such a marked and material difference between the two classes of peddlers as to make it entirely proper for the legislature, acting on considerations of general policy, to tax one class, and to permit the other to go free. The man who goes about the country selling what he has himself produced may be presumed to confer a benefit upon the general public, by eliminating the profits of the retail merchant, and perhaps even those of the wholesaler and jobber. He has a fixed abode where he produces the things which he sells, and where he may be reached and required to make good his warranties. He is generally the owner of immovable property, which is subject to state and local taxation. It may be that he is required by the municipality in which he lives to pay a poll tax and a tax upon his business; to build and repair sidewalks, and keep the same free from snow, ice, and other obstructions. He contributes to the social, educational, and financial property of the community in which he resides. He bears a just share there of the burdens of government. And, in addition to all this, it must be remembered that the selling of his products is only incidental to the business of producing them.''

This last matter is one referred to in a number of cases we have found, that is, that the selling is but an incident to the production where the selling is conducted by the one who produces.

"These characteristics," the judge continues, "speaking generally, distinguished the untaxed peddler from the peddler who is taxed; and they are, it seems to us, quite sufficient to justify the classification which the legislature has made."

There is a great deal more in the discussion of this question in the opinion which I should be glad to read if I had time. One judge dissents from the views of the majority of the court on certain points, but, if I understand his reasoning, he concurs as to the particular point which we have under consideration,

the right to discriminate between mere peddlers or hawkers and farmers or others marketing their own productions.

The supreme court of Michigan, in *People* v. *Sawyer,* 106 Mich. 428 [64 N. W. Rep. 333] holds:

"Under a charter giving the city power to license and regulate hawkers and peddlers, an ordinance requiring peddlers to take out licenses may exempt from its operation mechanics of the state selling their own manufactured articles, and farmers selling the products of their own farms." And in the opinion I find this language:

"The exemption of mechanics, in selling their own manufactured articles, and farmers, in selling products of their own farms, from the operation of the ordinance, is but following the state statute on the subject of the license to hawkers and peddlers. The power given by the charter is to regulate hawkers, peddlers, etc. Under this power the common council had authority to impose such reasonable conditions and limitations as it saw fit. 1 Dillon, Munic. Corp. Sec. 359. The discrimination in favor of mechanics and farmers in the sale of their products is within the power conferred by the charter on the common council. These immunities have been recognized for many years. By the statute of 50 George III, Chap. 41, Sec. 23, real workers and makers of goods within Great Britain were exempt from the payment of the license which was imposed upon hawkers and peddlers." He then cites some English authority in connection with this statement and adds: "In many if not in most of the American states, these immunities are granted to mechanics and farmers selling their own products, and the power is not questioned."

In the state of Kansas also the question has been passed upon by its court of last resort. In *Kansas City* v. *Overton,* 68 Kan. 560 [75 Pac. Rep. 549], the syllabus states:

"A city ordinance imposing a license tax on hucksters and hawkers is not invalid because it exempts from its operation those who are personally selling the products of their own or leased lands."

In *State* v. *Montgomery,* 42 Me. 433 [43 Atl. Rep. 13], decided by the supreme court of Maine, in which the legislative

Toledo v. Brown.

enactment of that state involving this principle is decided and the act is held constitutional, and in the opinion we have something added to the suggestions of reasons for the discrimination made in some of the other adjudications which I have cited. On page 15, Judge Savage, who announces the opinion, says:

"As expressive of the reason why it has been deemed advisable in time past to regulate the exercise of the business of hawkers, we quote from Jacob's Law Dictionary, title 'Hawkers':

"Those deceitful fellows, who went from place to place, buying and selling brass, pewter and other goods and merchandise, which ought to be uttered in open market; and the appellation seems to grow from their uncertain wanderings, like persons that with hawks seek their game where they can find it.

"The object of such legislation has also been well stated by Baron Graham to be to protect, on the one hand, fair traders, particularly established shopkeepers resident permanently in towns and other places, and paying rent and taxes there for local privileges, from the mischief of being undersold by itinerant persons, to their injury; and, on the other hand, to guard the public from the impositions practiced by such persons in the course of their dealings. *Attorney General* v. *Tongue,* 12 Price 51. So by Judge Cooley.

" 'That the regulation of hawkers and peddlers is important, if not essential may be taken as established by the current practice of civilized states. They are a class of persons who travel from place to place, among strangers, and the business may be easily made a pretense or a convenience to those whose real practice is theft and fraud. The requirement of a license gives opportunity for inquiry into incident and character, and the payment of a fee affords some evidence that the business is not a mere pretense.' "

Several other authorities are cited in support of the conclusion at which *State* v. *Montgomery, supra,* arrives that the enactment in that state is constitutional although it makes such discrimination.

It has seemed to me that this suggestion made by Judge Cooley as quoted in *State* v. *Montgomery, supra,* is entitled to weight. Of course it cannot be said that all persons who travel

from place to place are dishonest and that they are going about using the form of traffic as a cloak to disguise some fraudulent or corrupt purpose; but the legislature in its enactments, or the council in its ordinances, makes general rules because of general evils or dangers, precisely upon the principle that a license is required as to certain occupations, in order that people may not be deluded by persons not skilled in their trade or profession, although there may be many unlicensed persons having abundant skill.

I have discussed this question at length because counsel on both sides have sought a consideration of the case upon its merits as to the validity of the ordinance and the constitutionality of the law, and because it involves a question which may affect many municipalities in the state. Our view is that the court below was wrong in its conclusion that the statute of the state is unconstitutional and that the ordinance enacted under it is invalid, and we think for this reason that the judgment should be reversed.

Mr. Friedman:

This question is of considerable importance. It is not the mere matter of these five dollars, but I have some forty-five clients I think altogether in relation to that matter, and it is a matter of considerable importance, not only to us but to the city itself. I can say frankly that I deem it of even more importance than in this particular case the question of whether or not the mayor should issue the license, because the statute provides that the mayor should have a right to issue the license, and not only that ordinance provides that the auditor should issue the license, but also that we are charged in the affidavit with not having obtained a license from the auditor. It is of such interest to me that I trust the court will pardon me.

## WILDMAN, J.

I will say, if counsel desires, although I intended to cover the matter by the general statement made preliminary to consideration of the constitutionality of the statute and ordinance, that the statute does require that the license shall be obtained from the mayor. The ordinance provides that the application

Toledo v. Brown.

shall be made to the mayor and after certain examination the license shall be issued by the auditor, but we think that while the auditor is the clerical person who issues the license, he is but doing it as a ministerial act and under the authority and by the direction really of the mayor. While the ordinance is somewhat irregular in this respect, it is not invalidated by this fact. We think that the mayor does, in effect, under the ordinance as well as under the statute, issue the license, and when it is stated in the complaint that the defendant below was doing these acts without having obtained a license from the auditor, it means only that he has not obtained the license from the auditor as a last step in a series of acts which would entitle him to the license. We deem it equivalent to an expression on the part of the affiant that he had no license. However, if the affidavit was defective in this regard, it was shown upon the trial without contradiction that defendant stated that he had no license.

**Parker, J.,** concurs.

**Kinkade, J.,** dissents.