CATHARINE D. SHARPE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82530.   Promulgated September 9, 1938.

*Paul F. Myers, Esq.,* for the petitioner.
*Ralph F. Staubly, Esq.,* for the respondent.

504

OPINION.

ARNOLD: Section 302 of the Revenue Act of 1926 provides that the value of a decedent's gross estate shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, to the extent of the interest therein of the decedent at the time of his death.

The respondent has determined that Fannie G. Dixon, at the time of her death, had a vested interest in the principal of her father's estate valued at $147,353.54, and that she had a vested interest in coal properties of her father's estate valued at $456,597. In accordance with his determination, respondent has increased Fannie G. Dixon's gross estate by the value of these interests, and has found a deficiency of $46,970.63. Catharine D. Sharpe is the petitioner because she was the sole distributee of her mother's estate, and respondent has asserted the deficiency against her as a transferee under section 316 of the 1926 Act.

There is no dispute as to the values determined. The dispute is whether Fannie G. Dixon had *any interest* in her father's estate the value of which should be included in her own gross estate under section 302. Or, stated differently, did Catharine D. Sharpe acquire this property from her grandfather directly, or from her mother,

Fannie G. Dixon? This is purely a question of law, which must be determined from an analysis of the will of John Gilbert and from the other facts of record. If Catharine D. Sharpe took the property under John Gilbert's will there was no interest vested in Fannie G. Dixon which should be included in her gross estate. On the other hand, if Fannie G. Dixon acquired property rights under her father's will, which property she passed on to petitioner, the value thereof should be included in Fannie G. Dixon's gross estate.

Both parties rely upon the same proposition, which is stated by the decided cases as follows: "A gift of the income of a fund without a limitation as to time is a gift in perpetuity and carries the fund itself: *Robert's Appeal*, 9 P. F. Smith, 70; *Parker's Appeal*, 11 Id. 478; *Appeal of the Pennsylvania Company*, 2 Norris, 312." *Millard's Appeal*, 87 Pa. 457. See also *In re Tyson's Estate*, 191 Pa. 218, 43 Atl. 131; *In re Mifflin's Estate*, 232 Pa. 25; 81 Atl. 129; *In re Roger's Estate*, 245 Pa. 206; 91 Atl. 351, and cases cited therein. While each of the opposing parties agrees with the rule, each of them seeks to apply the rule differently. For example, the respondent contends that the application of the rule shows that Gilbert intended giving his children fee estates in his property, while petitioner contends that the application of the rule demonstrates Gilbert's intention of giving life estates to his children, with a gift over of income to his grandchildren, and that, in the absence of any further disposition of corpus or income, the rule then operated to pass the fund itself to the second generation. Petitioner asserts that the two opinions of the Orphans' Court of Philadelphia County support this construction of Gilbert's will.

Before proceeding with our examination of the opposing contentions we must point out that the one cardinal rule in construing wills is to ascertain the testator's intention, and, unless forbidden by public policy, to give force to that intention. *Smith* v. *Bell*, 31 U. S. 68. The rule which both parties hereto are invoking is not a rule of law, but a rule of construction adopted by the courts as an aid in determining the testator's intention, *Tyson's Estate, supra.* In order to determine what interest John Gilbert gave his daughter, and what interest, if any, he gave his granddaughter, the petitioner here, we must examine his will and ascertain from it his intentions in disposing of his property.

In May 1877, when John Gilbert executed his will, his immediate family consisted of his wife and five children, who were the natural objects of his bounty. He provided for them by dividing his property into two classes—his coal properties and his residuary estate. With exceptions not here material, everything he had, exclusive of his coal properties, was thrown into his residuary estate, which, after

proper compliance with his instructions, consisted of first bonds and mortgages. Both his coal properties and his residuary estate were placed in trust and the income therefrom was to be distributed as provided for in his will.

The coal properties were charged with the payment of annuities to Gilbert's wife and children, $15,000 per annum to his wife and $2,000 per annum to each of his children. Upon his wife's death the payment of her annuity was to be continued and distributed pro rata, or "share and alike", as provided under the intestate laws of Pennsylvania to his children and grandchildren. In the event of the death of any of his children the share of such deceased child was to be paid to the child or children of the deceased child. Any balance from the coal properties Gilbert gave to his wife and children share and share alike or to the child or children of any deceased child. These provisions indicate that Gilbert intended to provide for his wife and children by giving them the income from the coal properties. There was no intention of giving the income to his grandchildren unless one or more of his children predeceased him leaving issue. But since all of Gilbert's children survived him, the provisions of his will giving the share of a child that predeceased him to the issue of such child are inapplicable.

In like manner Gilbert disposed of that portion of the trust income from his residuary estate. He gave his wife one-third and gave the other two-thirds to his child or children, or the lawful issue of any child or children *then surviving*. Gilbert certainly contemplated the possibility that one or more of his children might predecease him, and he provided for this contingency by giving the parent's share to the lawful issue "then surviving." No language in Gilbert's will indicates that he intended to make a gift over of income to grandchildren as a class, but only an intent to provide for grandchildren who survived a child that had predeceased him.

In support of her contention that Fannie G. Dixon took only a life estate in the testamentary trust created by her father, petitioner points to the opinions of the Orphans' Court handed down in May 1923 and in April 1931. Examining the first of these decisions in point of time, it appears that the court recognized the question we have to decide, but refused to pass upon it, stating that "even if it were held that the gift of income under this will be a gift of the principal it can not be absolutely determined at this time whether all the parties who may be interested in the estate on final distribution are now before the court." This language must mean that the court was unwilling at that time to decide the question of whether Gilbert died intestate as to the principal, and that it was unwilling to decide the question of whether the gift of income without limitation of

time or gift over was a gift of the principal under *Millard's Appeal*, *supra; Mifflin's Estate*, *supra*, and cases therein cited, and *Wood's Estate*, 261 Pa. 480; 104 Atl. 673.

A further and, in our opinion, a more important reason for postponing the construction of Gilbert's will in May 1923 was stated by the Orphans' Court as follows: "It appears, moreover, from the petition for distribution annexed that the persons entitled to the estates of those of testator's family now deceased, by devolution, will or conveyance, are * * *; and they all join in requesting that the principal be awarded to the Trustees pending the death of Fannie G. Dixon, and the construction of the will postponed until that time. Under the circumstances, it seems to the Auditing Judge that such award may properly be made." And accordingly the account, as approved in writing by the persons entitled thereto, was awarded to the trustees.

During the interval between the Orphans' Court opinions, the parties entitled to John Gilbert's estate (namely, Fannie G. Dixon, Clayton G. Dixon, John Gilbert, and Gertrude Gilbert Loening), whether their interest was in principal or income, executed a trust agreement, dated August 18, 1924, wherein they recited that the entire right, title, and interest of Gilbert's widow and his five children in Gilbert's estate, whether under his will or by intestacy or otherwise, had vested in them, and they transferred thereby their right, title, and interests, however by them derived, to trustees, who were to take the coal lands upon the expiration of the trust created by John Gilbert's will on the death of Fannie G. Dixon, or otherwise. This trust deed must be considered in the light of the opinion of the Orphans' Court in May 1923 whereby the trust corpus was left in the hands of the trustees upon request of the parties in interest. By their trust agreement the parties transferred their interests in coal lands, which they stated *had vested* in them, to the trustees named therein, the transfers to be effective upon the termination of the then existing trust so that the coal lands "shall pass without hiatus to the Trustees herein named for the estate and on the trusts herein provided."

Although the stated purpose of the trust deed of August 18, 1924, was to insure the continued administration of the coal lands as a unit, the fact remains that the parties in interest reserved to themselves the income for life and a power to appoint by will the income, which carried with it a corresponding share of the trust principal upon termination of the trust. If Fannie G. Dixon was given only a life estate by John Gilbert's will she could not have reserved to herself a power of appointment by will. Considering, therefore, the facts which existed on August 18, 1924, it would appear that Fannie

G. Dixon executed the trust deed as an owner of an absolute interest in the estate of John Gilbert.

The 1931 opinion of the Orphans' Court supports our conclusion that that court did not determine the question in 1923, as the court said in the later opinion "the trust was kept alive until the death of the last surviving of testator's five children (which has now occurred) by agreement of the parties in interest." This, in our opinion, is a specific holding that the trust existed by agreement of the beneficiaries, and not by the provisions of Gilbert's will. The sentence immediately following the court's statement that the trust was kept alive by agreement, is a definite conclusion of law by the court that the trust consisted of a gift of income only, without limitation of time, or gift over of principal.

Giving effect therefore to the established rule of construction in Pennsylvania, In re Byrne's Estate, 181 Atl. 500, and cases cited, it is our opinion that Gilbert gave the income from the testamentary trust created by his will to his children, or to the child or children of any deceased child of his surviving at the date of his death. In our opinion Gilbert made no provision for a gift over of income to his grandchildren as a class, but only to such grandchildren who were surviving a deceased child of Gilbert at the time of the latter's death, and, since Gilbert set up no limitation of time as to the gift of income and made no gift over of the corpus, the established rule requires a holding that it was Gilbert's intention to give the trust corpus itself, postponing only the right of possession.

If there was doubt as to this matter it would have to be resolved against petitioner's contention under the established rule adopted by the courts relative to the early vesting of estates. In Millard's Appeal, supra, the court quoted the rule as laid down in Amelia Smith's Appeal, 11 Harris, 9, as follows: " 'in the construction of wills the law in doubtful cases, leans in favor of an absolute rather than a defeasible estate; of a vested rather than a contingent one; of the primary rather than the secondary intent; of the first rather than the second taker as the principal object of the testator's bounty.' "

In view of the foregoing discussion we agree with respondent's contention that as a matter of law Fannie G. Dixon had a vested interest in the corpus of her father's estate, the value of which was includable in her gross estate under section 302 of the Revenue Act of 1926. In so far as Fannie G. Dixon transferred a portion of her interest in her father's estate by the deed of trust of August 18, 1924, that part of her interest should be included in her gross estate because at her death there was an outstanding power, reserved by her in the deed of August 18, 1924, the termination of which by her death effected a shifting of economic benefits which subjected the

property involved to tax. *Chase National Bank* v. *United States*, 278 U. S. 327; *Commissioner* v. *Chase National Bank*, 82 Fed. (2d) 157; certiorari denied, 299 U. S. 552.

The second issue is whether respondent can lawfully assert a tax against petitioner as a transferee after having found and ruled that there was no tax liability on the part of the estate arising from the alleged vested interest of the decedent in the properties of her father's estate. It is the duty of the Commissioner to determine the correct tax liability of each taxpayer, and he has authority to change any determination considered erroneous, *Burnet* v. *Porter*, 283 U. S. 230; *Omaha Baum Iron Store, Inc.* v. *United States*, 8 Fed. Supp. 703, and where the distribution of the assets of the estate to the sole devisee left the estate without assets and a determination against it would be entirely futile, the respondent may proceed directly against the transferee, *Flynn* v. *Commissioner* (C. C. A., 5th Cir.), 77 Fed. (2d) 180; *Baumgartner* v. *Commissioner* (C. C. A., 9th Cir.), 51 Fed. (2d) 472, affirming 21 B. T. A. 623; certiorari denied, 284 U. S. 674; *City National Bank* v. *Commissioner* (C. C. A., 5th Cir.), 55 Fed. (2d) 1073, affirming 19 B. T. A. 1080; certiorari denied, 286 U. S. 561. The Commissioner's failure to determine a deficiency against the estate prior to distribution of its assets does not, therefore, preclude him from proceeding directly against the transferee, *Helen Dean Wright*, 28 B. T. A. 543, and cases cited.

In this proceeding all the assets of the estate of Fannie G. Dixon were distributed to petitioner in 1932, long prior to the issuance of the deficiency notice. However, the statute of limitations did not run against the executor of Fannie G. Dixon's estate until October 9, 1934, three years after the estate tax return was filed, sec. 310, Revenue Act of 1926. Under section 311 of the Revenue Act of 1932 the period of limitation for assessment of the liability of a transferee is within one year after the expiration of the period of limitation for assessment against the taxpayer. The respondent therefore had until October 9, 1935, to make an assessment against the petitioner as transferee of the assets of her mother's estate. Since the deficiency notice was mailed to petitioner as transferee on September 25, 1935, it was within the statutory period of limitations.

In view of the foregoing discussion, it is our opinion that Fannie G. Dixon's gross estate should include the value of her interest in the property left her by John Gilbert, and we are further of the opinion that respondent properly proceeded against Catharine D. Sharpe as the transferee of her mother's estate.

*Decision will be entered for the respondent.*