## Keyser *versus* Mitchell *et al.*, Garnishees.

1. A testator devised to trustees to collect, &c., rents and income and "pay said income, &c., or so much as the trustees may think proper, &c., under all the circumstances of the case for the support and maintenance of my son Charles during his life, with the intent and purpose that the said trustees may either pay the said income, or such portion thereof as they may think proper, into the hands of my said son, or disburse the same in such way as to the said trustees may seem best for his comfortable support and maintenance, such payments and disbursements to be at all times at the sole and absolute discretion of the said trustees. *Held,* that the income was not liable to attachment under a judgment against the son.

2. The income was payable to the son at the discretion of the trustee.

3. Until the discretion was exercised the son had nothing.

4. In such case, chancery will not interfere to control the trustee's discretion.

5. To subject the income to an execution would end the trustee's discretion and defeat the testator's intent.

6. This form of guarding the trust and the income from the prodigality of the son is as effectual as an express exclusion of the creditors by the will.

7. Girard Life Insurance and Trust Co. *v.* Chambers, 10 Wright 485, distinguished.

February 10th 1871. Before THOMPSON, C. J., SHARSWOOD and WILLIAMS, JJ. READ, J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 187, to January Term 1871.

This was an attachment execution issued October 1st 1869, by Edmond Keyser against Charles Nicholas, defendant, and Thomas Mitchell and John C. Mitchell, and George P. Russell and David C. Landis, trading as Russell & Landis, garnishees. There was no service on the defendant or on John C. Mitchell, one of the garnishees.

[Keyser *v.* Mitchell.]

Interrogatories to the summoned garnishees were filed, inquiring as to the indebtedness of the garnishees to the defendant or possession by them of property belonging to him, &c.

The 7th was :—

"Are you a tenant or trustee in any manner of defendant, directly or indirectly ? If ay, does he, through you, directly or indirectly, derive any interest from real estate under the will of his mother, Maria Nicholas ? and if ay, how much, in what manner, and when the same became due and payable ?"

Thomas Mitchell, one of the garnishees, answered as follows :—

"To the 2d, 3d, 4th and 5th interrogatories he saith : Not otherwise than as set forth in his answer to the 7th interrogatory. * * *

"To the 7th interrogatory he saith : That he is trustee for the said defendant under the last will and testament in writing of Mrs. Maria Nicholas, deceased, and the codicil thereto, dated respectively the 21st day of December, A. D. 1854, and the 18th day of December, A. D. 1866, wherein the testatrix, among other things, willed as follows : ' 6th Item. I give, devise and bequeath to the Girard Life Insurance, Annuity and Trust Company of Philadelphia, their successors and assigns, one full equal moiety or half part of my store and lot of ground devised to me by my late husband, situate, &c., To hold upon trust, to collect and receive the rents and income accruing from the said moiety of the said premises, and, after deducting and paying thereout all taxes, &c., to pay the said rent or income, or so much thereof as the trustee may think proper and expedient, under all the circumstances of the case, to and for the maintenance and support of my son Charles, during all the term of his natural life, with the intent and purpose that the said trustees may either pay the said income, or such portion thereof as they may think proper, into the hands of my said son, or disburse the same in such way as to the said trustee may seem best for his comfortable support and maintenance, such payments and disbursements to be at all times at the sole and absolute discretion of the said trustee.' By the codicil to her said will the testatrix revoked the appointment so as aforesaid made of ' The Girard Life Insurance, Annuity and Trust Company of Philadelphia ' as trustee as aforesaid, and substituted and thereby appointed this respondent to be trustee in their place and stead, &c. * * *

"And this respondent further saith, that he has, from time to time since the decease of the said testatrix, received the one-half of the rent of the store so as aforesaid in her said will mentioned, and receipted for the same as trustee as aforesaid, and has held and disposed of the same according to the directions in the said will contained. And at the time of the service of the attachment in this case, &c., he had in his hands, of moneys belonging to the

[Keyser v. Mitchell.]

said trust estate, the sum of $397.50, of which amount the sum of $198.75 was necessary to pay off certain taxes and charges become due and payable since the decease of the said Mrs. Maria Nicholas, and the balance thereof, to wit, the sum of $198.75, this respondent holds under the said trust for the benefit of the defendant, on and about his comfortable support and maintenance, in respect to which, as he is advised and believes, and so submits to the court, he is the sole and exclusive judge."

Russell and Landis, the other garnishees, answered all the interrogatories in the negative, qualifying the 7th by saying that they had rented the storehouse from the testator, and occupied it at the service of the attachment; that they owed for rent $416.66, which they had paid to Thomas Mitchell, the trustee under Mrs. Nicholas's will.

Besides the clause given in the garnishee's answer, the will of Mrs. Nicholas contained the following:—

"Provided, however, and I do hereby declare it to be my will, that if, in the opinion of the said trustees, it shall become proper and expedient, upon a full consideration of the habits, prospects and conduct of my said son, or of the situation and prospects of his family, if he should marry and have issue, that he or they should enjoy the said trust estate, or some part or portion thereof, absolutely and in full property, of which propriety the said trustees shall be the sole judges; then it shall be lawful for the said trustees to assign and convey the same, or such part or portion thereof as to the said trustees may seem fit and expedient to vest in him, to my said son Charles, his heirs, executors, administrators and assigns, or to hold the same in trust for any lawful issue that my son may hereafter have, or to make such other disposition thereof as may, in the sole judgment and discretion of the said trustees, be most advisable with reference to the true and permanent welfare and interest of my said son."

On the trial, October 22d 1870, before Thayer, J., the plaintiff gave in evidence a judgment for $856.94 against the defendant; the interrogatories and answers; and the will of Mrs. Nicholas, and closed.

He then asked the court to charge that he was entitled to recover the amount admitted to be in the hands of the garnishees and the same was liable to attachment.

The court charged that the money in the garnishees' hands was not liable to attachment, and that the verdict should be for the garnishees. The jury so found.

The plaintiff took a writ of error, assigning for error the instructions of the court.

*L. Hirst* and *R. C. McMurtrie,* for plaintiff in error, cited Ham-

[Keyser *v.* Mitchell.]

ersley *v.* Smith, 4 Wharton 128; Girard Life Ins. & T. Co. *v.* Chambers, 10 Wright 486; Still *v.* Spear, 9 Id. 170; Hill on Trustees 492, 493.

*T. Mitchell*, for defendants in error.—Shankland's Appeal, 11 Wright 113; Horwitz *v.* Norris, 13 Id. 213; Walker *v.* Walker, 5 Madd. Ch. R. 424; Lavett *v.* Beirne, 21 Conn. 1; Harding *v.* Glyn, Lead. C. in Eq. 685; Hill on Trusts 495; Lewin on Trusts 104, ch. xx., § 2; Pink *v.* De Thuisey, 2 Madd. Ch. R. 157; French *v.* Davidson, 3 Id. 396; Livesey *v.* Harding, Tamlyn 460; Thomas *v.* Dering, 1 Keen 729; Stevenson's Estate, 1 Parsons 18; In re Wistar, 2 Phila. R. 377; Chew *v.* Chew, 4 Casey 17; Still *v.* Spear, 9 Wright 168; and Naglee's Estate, 2 P. F. Smith 159.

The opinion of the court was delivered, May 8th 1871, by
THOMPSON, C. J.—The question in this case is, whether the income of the trust created for the benefit of Charles Nichols, the defendant, by the will of his mother, was attachable in the hands of his trustee for debts contracted by him without the consent of the trustee?

We have but part of the will of the testator on our paperbooks, and we must presume it is the material portion of it in the case, otherwise the whole would have been given by the defendants in error.

The will is dated the 21st of December 1854, with a codicil dated the 18th of December 1866, merely changing the trustees. After designating the trustee and describing the property intended to be put in trust, the will reads: "To hold upon trust, to collect and receive, the rents and income, accruing from the moiety of the said premises, and after deducting thereout, all taxes and charges, to pay the said rents and income, or so much thereof, as the trustee may think proper and expedient under all the circumstances of the case, to, and for, the support and maintenance of my son Charles, during the term of his natural life, with the intent and purpose, that the said trustee may either pay the said income, or such portion thereof as he may think proper, into the hands of my said son, or disburse the same in such way as to the trustee may seem best for his comfortable maintenance, such payments and disbursements to *be at all times at the sole and absolute discretion of the said trustee.*" The next item of the will (the seventh), provides for a contingent disposition of the *corpus* of the property, also at the discretion of the trustee.

Because this will contains no prohibition of liability of the income to debts of the *cestui que trust*, it is claimed on the authority of the Girard Life Insurance, Annuity and Trust Co. *v.* Chambers, 10 Wright 485, that it is subject to the attachment execu-

[Keyser *v.* Mitchell.]

tion. I need not stop to discuss that case, and distinguish it from this, for in it there was an express direction to the trustees to pay over absolutely to the *cestui que trust,* or to his order, the income of the trust property quarterly, without the exercise of the least discretion on the subject by them. The income was therefore held to be his own absolutely, and he could invoke the aid of a chancellor to compel payment by the trustee to him of the amount quarterly as provided for. So might an assignee or creditor of the *cestui que trust* have done on the same principle. But here nothing is given to the *cestui que trust,* excepting at the *discretion* of the trustee. It was no doubt intended by the testator that a comfortable maintenance should be provided from the trust estate for her son ; but that was to be both in amount and mode, " at the sole and absolute discretion of the trustee." This is an express condition of the trust, and until that discretion has been exercised the *cestui que trust* has nothing : Hill on Trustees 494, 495. In such case, chancery will not interfere to control the trustees' discretion : Id. 495. To subject the income to execution at the suit of a creditor, would end all discretion of the trustee over the income, and in effect, utterly defeat the intent of the testator in creating it. We cannot but regard this form of trust to be as effectual in guarding a trust and its income against the prodigality of its beneficiary, as would be a positive exclusion of creditors in the will of the donor. Where the amount results from the discretion of the trustee, and that discretion is personal, no sum, *eo nomine,* exists to be attached. It only belongs to the *cestui que trust* when it is paid, or in some other way made over, or set apart to him. We think, therefore, the attachment in this case against the trustee was entirely inoperative to bind any interest of the defendant in the trust estate, and the judgment must be affirmed.

Judgment affirmed.