# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

Estate of Daniel LaBar, deceased. Appeal of George
F. Heller and Hiram LaBar, Executors of the Last
Will and Testament of Daniel LaBar, deceased, and
Amzi LaBar, Hiram LaBar, Frank LaBar, Sarah M.
Heller, Elizabeth Schoonover, Susanna Overfield and
Margaret Hill, Heirs and Legatees of Daniel LaBar,
deceased.

*Will—Construction of—Vested with contingent interest.*

Testator devised a lot to his housekeeper " for and during such part of
her natural life as she remain unmarried;" and in his will directed that
" upon her death or marriage" the property should be sold, and the pro-
ceeds should be distributed as a part of his residuary estate. He also di-
rected that certain bank stock should be held in trust for her " so that she
receive all the income or dividends arising or accruing therefrom, imme-
diately from and after my death, so long as she remain unmarried, and
if at any time or times she needs any part of the principal of the stock
she is at liberty to receive it for her support and maintenance. If any
part of said stock is remaining at her death or marriage it shall be dis-
tributed as is hereinafter provided in relation to my residuary estate." In
a subsequent clause of the will he declared that it was his intention that
the housekeeper should have the use and enjoyment of his " house and
lot, and everything therein contained, for and during all the time of her
life she remains unmarried, and if she deems it necessary, may at any
time or times use part or all of the principal of the bank stock for her sup-

port and maintenance." *Held*, (1) That the legatee was not entitled to demand an absolute transfer to herself of all the bank stock; (2) that she was only entitled to the bank stock if it appeared that through a deficiency of income a portion of the principal was necessary for her support and maintenance.

*Decedents' estates—Costs—Will.*

Where a legatee under a will institutes proceedings in the orphans' court to secure the construction of the will in his interest, and fails in his purpose, the costs, both in the orphans' court and Supreme Court, should be borne by him.

Argued March 9, 1897. Appeal, No. 595, Jan. T., 1896, by George F. Heller et al., from decree of O. C. Monroe Co., dismissing exceptions to auditor's report. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Reversed.

Exceptions to auditor's report.

The material portions of the will are as follows :

"Second. I give and devise the house and lot where I now reside and the household furniture therein to Arminda Treible, who now lives with me, for and during such part of her natural life as she remain unmarried; and upon her death or marriage, I direct the same to be sold by my executors hereafter named and the proceeds thereof to be distributed as is provided hereafter in regard to my residuary estate. I hereby give my executors full power, authority and direction to sell the said house and lot on her death or marriage without any liability on the part of the purchaser to see to the application of the purchase money.

"Third. I also direct that fifty-six shares of the stock of the First National Bank of Easton and fifty shares of the stock of the Northampton County Bank be held in trust for the said Arminda Treible so that she receive all the income or dividends arising or accruing therefrom, immediately from and after my death, so long as she remain unmarried and if at any time or times she needs any part of the principal of the stock she is at liberty to receive it for her support and maintenance. If any part of said stock is remaining at her death or marriage it shall be distributed as is hereinafter provided in relation to my residuary estate.

"Fourth. I direct that the lot on the other side of the road opposite my house and lot shall be considered and treated as

part of my house and lot and be held and enjoyed by the said Arminda Treible in the same manner as is provided for in item second and shall not be.sold or conveyed to any other person until her death or marriage.

" Seventh. All the rest residue and remainder of my estate, real and personal, shall be divided as is provided and set forth in the intestate laws of the commonwealth of Pennsylvania. But I declare that it is my will and intention in the second and third items of this my Will that Arminda Treible shall have the use and enjoyment of my Shawnee house and lot and everything therein contained for and during all the time of her life she remain unmarried, and if she deems it necessary, may at any time or times use part or all of the principal of the bank stock for her support or maintenance."

The testator was a childless widower at the time of his death. None of his brothers or sisters survived him, and but one of them left issue surviving. He had a considerable estate, all of which was disposed of by the will. The legatee, Arminda Treible, lived in his family for a long while previous to his death as hired help, and down to the time of his death.

The auditor, Joseph H. Shull, Esq., held that Arminda Treible was entitled to the bank stock absolutely.

Exceptions to the auditor's report were dismissed in an opinion by CRAIG, P. J.

*Errors assigned* were in dismissing exceptions to auditor's report.

*John B. Storm*, of *Storm & Palmer*, with him *Henry J. Kotz*, for appellant.—Words in general are to receive such a construction as will give to every expression some effect, rather than one that will render any of the expressions inoperative : 1 Redfield on Law of Wills, 427 ; Jarman on Wills, (3 Am. ed.) 400 ; Cox v. Rogers, 77 Pa. 160 ; Hambright's App., 2 Grant, 320.

Whatever doubt there may be as to the testator's intention in other parts of the will, one thing is clear and distinct ; and that is, that the bequest was made to Arminda Treible on condition that she must remain unmarried. That intention is disclosed in every clause of the will referring to the legatee, Arminda Treible.

*Stewart S. Shafer*, for appellee.—The legacy of Arminda
Treible was an absolute gift : Scholl's App., 18 W. N. C. 91 ;
Second Reformed Presbyterian Church v. Disbrow, 52 Pa. 224 ;
Pennock's Est., 20 Pa. 268 ; Lejee's Est., 5 Dist. Rep. 236 ;
Irwin v. Farrer, 19 Vesey, 86 ; Barford v. Street, 16 Vesey,
136 ; Straub's Appeal, 1 Pa. 86 ; Jauretche v. Proctor, 48 Pa.
466 ; Hambright's Appeal, 2 Grant, 320 ; Follweiler's Appeal,
102 Pa. 581 ; Markley's Est., 132 Pa. 352 ; Gold's Est., 133 Pa.
495 ; Heppenstall's Est., 144 Pa. 259 ; Cox v. Rogers, 77 Pa.
160 ; Brown's Appeal, 12 Cent. Rep. 684 ; Drennan's Appeal,
10 Cent. Rep. 646 ; Rominger's Est., 43 Pitts. L. J. 206 ; Jack-
son's Est., 179 Pa. 77 ; Luckenbach v. Luckenbach, 175 Pa. 484.

OPINION BY MR. CHIEF JUSTICE STERRETT, April 19, 1897 :
This appeal by the executors and residuary legatees of Daniel
LaBar from the decree confirming the auditor's report involves
the construction of his will so far as its provisions relate to one
of his beneficiaries, Arminda Treible, and especially the trust
created " for her support and maintenance."

At the time of his decease in January, 1894, the testator was
a widower without children or other descendants.   His nearest
relatives and next of kin—to whom he gave his residuary estate
—were seven nephews and nieces, children of a deceased brother.
His wife predeceased him " three or four years."   In her life-
time Arminda Treible was employed in general housework, and,
after Mrs. LaBar's death, continued in testator's service as his
working housekeeper.

It is very evident from the second, third and seventh clauses
of the will, and codicil thereto, that one of the chief objects of
testator's bounty was his trusted and faithful employee, Miss
Treible, for whose comfortable support and maintenance he in-
tended to make suitable provision, not absolutely and uncondi-
tionally, nor during her entire lifetime, but only " so long as "
she lives and " remains unmarried."   Indeed, his only disclosed
purpose in making a will appears to have been to secure some
suitable provision for her support and maintenance while " she
remains unmarried," and the creation of other specified trusts.
Aside from these he appears to have been entirely satisfied with
the disposition which the intestate law would make of his resid-

uary estate, real and personal; and he accordingly directed that the same should be distributed in accordance therewith.

In the second clause of his will he devised the house and lot where he then resided in the village of Shawnee " and the household furniture therein to Arminda Treible . . . . for and during such part of her natural life as she remains unmarried. And, upon her death or marriage," he directed his executors to sell the property thus devised to her and distribute the proceeds as thereinafter provided in regard to his residuary estate.     The duration of that devise is clearly limited by the marriage or death of the devisee, whichever may first happen.

In the third clause he made provision for the "support and maintenance" of his said housekeeper by directing "that fifty-six shares of the stock of the First National Bank of Easton and, fifty shares of the stock of the Northampton County National Bank be held in trust for the said Arminda Treible, so that she shall receive all the income and dividends arising or accruing therefrom immediately from and after my (his) death, so long as she remains unmarried.     And if at any time or times she need any part of the principal of said stock she is at liberty to receive it for her support and maintenance.     If any part of said stock is remaining at her death or marriage it shall be distributed as hereinafter provided in relation to my (his) residuary estate."

Again, in the seventh clause,—after directing that all the residue and remainder of his estate, real and personal, shall be divided and distributed as is provided and set forth in the intestate laws of the commonwealth . . . . he declares it is his "will and intention in the second and third items . . . . that Arminda Treible shall have the use and enjoyment of my (his) Shawnee house and lot and everything therein contained for and during all the time of her life she remains unmarried; and if she deems it necessary, may at any time or times use part or all of the principal of the bank stock for her support or maintenance." This clause enlarges the bequest of "the household furniture," —made in connection with the devise of testator's house,—to " everything . . . . contained" in said house.     With this exception, there is no repugnancy between the provisions relating. to the "support and maintenance" of Miss Treible.     On the contrary, when considered together and in connection with

other parts of the will, they are not only consistent with each other, but they clearly and distinctly show that the testator's intention was to create an express trust of the one hundred and six shares of bank stock to provide a regular annual income for the purpose of comfortably supporting and maintaining the cestui que trust, until her marriage or death, whichever shall first occur, coupled with the provision that in case it becomes necessary she shall have the right to demand and receive from the trustees so much of the proceeds of portions of the corpus as may from time to time be needed for "her support and maintenance." This latter provision was evidently intended to provide for possible temporary exigencies that might arise and make it necessary to supplement, for the time being, her regular annual income, which he evidently considered would be ordinarily sufficient for her needs. It was never intended to be used as a pretext for demanding and appropriating to her own use the entire corpus of the trust. Nothing could have been further from the testator's intention than that his beneficiary should, within less than three years after his decease, have the right to capriciously and arbitrarily demand from his executors an absolute transfer to herself of all the bank stock constituting the corpus of the trust created solely for the purpose of providing an annual income for her comfortable "support and maintenance." If such an unconscionable demand as that were acceded to, it would not only defeat the manifest purpose of the testator in creating the trust, but it would operate as a fraud upon his residuary legatees. It cannot be seriously asserted, nor is there a particle of evidence to show that at any time, since the death of her benefactor, has the income of the trust been insufficient for the appellee's comfortable support and maintenance in the style in which she had been accustomed to live. On the contrary, one of the witnesses acquainted with Miss Treible and the expenses of living in that neighborhood being asked whether, —taking into consideration the fact that she had the use of the house and lots and all the furniture in the former,—he would consider an annual income of about $300, "provision ample for her necessary support and maintenance," said: "I consider it a liberal provision for her support."

It is very evident that the appellee's demand for the transfer of all the bank stock to herself was not prompted by anything

like "need" of additional income. She never presented for payment, nor received the proceeds, of the checks for bank stock dividends which the executors from time to time sent her; so that up to the date of the audit, at least, she has received none of the "income" specially intended for her "support and maintenance." The only reason suggested for not availing herself of the money is that receipt of the income, through the executors might interfere with the scheme to appropriate to herself the corpus of the trust. If she hereafter demands any portion of the corpus, on the ground that she needs it, the trustees and court below should be satisfied that the alleged necessity therefor really exists. In other words, if it does not appear that such claim is made in good faith and is grounded on reasonable necessity it should not be allowed. In no other way can the intention of the testator, as we understand it, be fully and fairly carried out, and the respective interests of all parties be properly protected.

In Gross v. Strominger, 178 Pa. 64, this Court, holding that the provision made in that case by the testator for his widow was not an absolute gift to the latter, said: "Testator's wife was manifestly the primary object of his bounty. Whatever was necessary for her support he intended she should have. If the income of the estate was sufficient to afford her a suitable maintenance, it was his intention that the principal should go, at her decease, to the children and grandson unimpaired. A construction of the privilege which makes it operate as an absolute gift to the wife of the residue of the estate would defeat the plain purpose of the testator, and take from the children and grandson . . . . that which he intended they should have at her decease." So, in this case, if we should hold, as is contended on behalf of the appellee, that the privilege given her to receive and use part or all of the corpus of the trust, "if at any time she need any part" thereof "for her support and maintenance," etc., operates as a present absolute gift of the stock constituting said corpus, and authorizes her to demand an immediate transfer thereof to herself absolutely, it would defeat the manifest intention of the testator, not only in creating the trust for appellee's benefit, but in bequeathing the corpus, or so much thereof as may remain at the expiration of the trust, to his nephews and nieces. There is nothing in the will or dehors that instrument

that would justify us in thus construing it. It follows from what has been said that the assignments of error must be sustained. The proceedings before the auditor appear to have been commenced at the instance of the appellee, and were carried on for her supposed benefit. It is therefore proper that she should pay the costs thus incurred.

The decree of the orphans' court is reversed and set aside, and it is ordered that the costs, including costs in the court below, be paid by the appellee, Arminda Treible.