## Boyer's Estate.

*Wills—Accumulations—Intestacy—Act of April 18, 1853.*

Testator bequeathed part of his estate for the benefit of his daughter, with direction to his trustees to collect the income from said fund and to "pay out such sums as may be necessary for her proper maintenance, comfort and support . . :' and whatever shall remain of dividends, interests or profits each year, after paying all necessary expenses . . . and for looking after and taking care of my said daughter, E., shall be safely invested for my said daughter's benefit," with a discretionary power to use the principal in case it became necessary to do so in order to relieve the beneficiary's necessities, and the residuary clause provided that the said daughter's share in the residuary estate should go to the trustees "upon the same condition as I have hereinbefore provided in my bequest to her." Upon the death of the daughter, E., there was an accumulated income of $94,974.53 in the hands of her trustees for distribution: *Held*, that the accumulation of income in excess of the needs of the life-tenant was unlawful under section 9 of the Act of April 18, 1853, P. L. 503, and passed under the intestate laws to testator's next of kin.

Exceptions to adjudication.   O. C. Berks Co., Sept. T., 1922, No. 10.

*Robert Grey Bushong*, for exceptant;   *P. Herbert Reigner*, for accountant.

SCHAEFFER, P. J., Dec. 2, 1922.—The question to be determined on the exceptions filed to our adjudication depends on the construction of the will of

Daniel B. Boyer, deceased. The provisions of the will which have a direct bearing on the question are as follows:

"Item 7. I give and bequeath unto my two sons, James K. Boyer and Horace K. Boyer, in trust for my dearly beloved daughter, Emaline B. Boyer, for and during the term of her natural life the sum of twenty-nine thousand three hundred dollars ($29,300), being the like amount given herein to each of my other children out of my Pottstown Gas and Water Company stock, and out of my Pottstown National Bank stock, and out of any other stock or available assets I may have at the time of my decease for the purpose of making up said amount—and for the further securing to her, the said Emaline B. Boyer, of the said sum of $29,300, it is my will, and I do order and direct that the said sum of $29,300 shall be and remain a charge on all the real estate hereinbefore devised to my three children, James K. Boyer and Malinda B. Erb, in the following sums and proportions against the properties of each, to wit: Against the real estate herein devised to James, a charge of twelve thousand dollars ($12,000) ; against the real estate herein devised to Malinda, a charge of six thousand dollars ($6000)—which said charges against their respective properties shall continue for and during the natural life of my said daughter Emaline, which charge on said real estate as security for the faithful performance of said trustee's duties to my said daughter Emaline shall cease and determine when the conditions of the aforesaid trust are fully performed and ended; and immediately after the death of my said daughter Emaline, the said sum of $29,300 shall be divided equally between my other three children, James, Horace and Malinda, share and share alike, provided they be then all living—and in case any of my said other three children should die before my said daughter Emaline, then the share to which such deceased child would be entitled if living shall go to and be equally divided among the children and heirs of such deceased child. The said trustees for my daughter Emaline shall collect all the dividends, interests and profits arising from said stocks or other securities hereinbefore bequeathed to them in trust for her, and shall pay out such sums as may be necessary for her proper maintenance, comfort and support, so that her life may be made easy and comfortable as possible and in keeping with her estate—and whatever shall remain of dividends, interests or profits each year after paying all necessary expenses, including board, clothing, and for looking after and taking care of my said daughter Emaline, shall be safely invested for my said daughter Emaline's benefit, in such securities as her said trustees shall deem most advisable. If in case of sickness or from other cause it should be found that the annual income arising from my said daughter Emaline's share should not be sufficient to defray all the necessary expenses, then her said trustees are authorized to use so much of the principal as may be necessary to relieve her necessities, and for their care and trouble in looking after and guarding the interests of my said daughter Emaline, my said sons and trustees, James and Horace, shall each receive annually the sum of ten dollars ($10).

"I desire here to especially call the attention of my three children, James, Horace and Malinda, to the anxiety their dear mother always felt for the welfare and comfort of her daughter Emaline, who was and is unable to care for herself, and, therefore, I hope that all my said three children will consider it their duty to bestow on her such special care, sympathy and affection as the character of her affliction demands.

"Item 19. All the rest, residue and remainder of my estate, real, personal and mixed, whatsoever and wheresoever, or of what nature, kind and quality soever the same may be, and not hereinbefore given and disposed of, I give,

3 D. & C.

devise and bequeath equally among all my said children, James, Horace, Malinda and Emaline, share and share alike, their heirs and assigns, forever, subject to this provision only, that the share of the residuary estate coming to my daughter Emaline shall go to my sons James and Horace in trust for my said daughter Emaline, under the same provision, and upon the same condition as I have hereinbefore provided in my bequests to her—the same to be a charge on the real estate of my sons James and Horace until the said trust is fulfilled and ended."

The testator died in 1892, and left to survive him four children, James K. Boyer, Horace K. Boyer, Emaline B. Boyer and Malinda B. Erb. Under the provisions of the foregoing items of the will of testator, the shares of Emaline B. Boyer, which consisted of a legacy of $29,300 and the one-fourth part of the residue, amounting to $4603.50, were held in trust for her by her brothers, James K. Boyer and Horace K. Boyer, until the time of her death, which occurred on July 27, 1921. The trusts for her benefit having then terminated, the surviving trustee, Horace K. Boyer—James K. Boyer, the other trustee, having died on Feb. 27, 1922—filed his account as trustee, embracing these two funds and accumulated income thereon, amounting to $94,974.53.

At the audit, counsel for accountant took the position that these accumulations were illegal and passed under the residuary clause of testator's will to Horace K. Boyer, and the children of Malinda Erb, who is also deceased. Adopting this view, we made distribution accordingly. Orson N. Ritzman, Register of Wills of Berks County, filed exceptions to this adjudication, the substance of which is that the amount of $94,974.53, which represents unexpended income, should have been distributed to the personal representative of Emaline B. Boyer, and as her estate it passed to Horace K. Boyer, the personal representative of James K. Boyer, and the children of Malinda Erb, subject to the collateral inheritance tax. In other words, the question is whether the $94,974.53 are lawful accumulations and belong to the estate of Emaline B. Boyer, or whether they represent illegal accumulations and pass under the intestate laws or the residuary clause in the will.

Counsel for exceptant argues that the language of the will clearly demonstrates that the testator had no intention to accumulate and add to the principal of the trusts any of the accruing income, because he requested that such income should be invested for her benefit, and that principal and income of both funds should be spent for the comfort, maintenance and support of the daughter Emaline, if the trustees saw fit to do so; and that because this daughter Emaline, a single lady, was weak-minded and in poor health, the testator commended her to the care and affectionate interest of her brothers and sister, which undoubtedly shows that he was solicitous of her future comfort and happiness and desired his trustees to do whatever was necessary to contribute to this result. As above stated, the argument is made that because the trustees were authorized to expend the principal, if necessary, and that the accrued income should be invested for her benefit, the accrued income, under the will, belonged to her, and could not be considered as undisposed of by the will.

It will be observed that by the words of the will all payments and disbursements to the *cestui que trust* are to be under the control and direction of the trustees, and shall be made by them as her necessity and comfort demand. A discretion is given to the trustees to pay such portions of income and principal for the comfortable support and maintenance of the *cestui que trust* as they may think proper, and, consequently, there is a limitation by the will of the income to pass to the *cestui que trust*, and she has no absolute ownership

in the whole income: Keyser *v.* Nicholas, 7 Phila. 150, affirmed by the Supreme Court in Keyser *v.* Mitchell, 67 Pa. 473. The *cestui que trust* during her lifetime could not have demanded all the income, because the trustees were to expend merely what was necessary for her comfortable maintenance and support. The obvious intent of this limitation of the income was to protect and assist the *cestui que trust*, who was mentally and physically weak, and apparently unable and incompetent to handle the income and principal of her share of decedent's estate. In Hoskinson's Estate, 28 Dist. R. 155, where a similar question of the distribution of the surplus income arose, the court held that it did not go to the *cestui que trust*, but passed under the intestate laws. In that case the life-tenant was an invalid, who was maintained by the trustee in the Pennsylvania Hospital until his death, and the income which was unused at that time amounted to $17,547.46. The point was made that this accumulated income belonged to the estate of John W. Hoskinson, the invalid, and the court held that "it is quite evident that the life-tenant had only such right or title to the income as he might derive through the exercise by the trustee of his discretionary power, except, of course, that he had a right to his comfortable support and maintenance, and that it, therefore, follows that these accumulations do not belong to the estate of John W. Hoskinson, and as the testator does not expressly provide for the disposition of any such accumulations, and as the trust devise is found in the residuary clause, it results that the testator died intestate in respect to this surplus income." In the case at bar, counsel for exceptant argues that the will of the testator disposes of the accumulated income by the direction that "whatever shall remain of dividends, interests or profits each year, after paying all necessary expenses, including board, clothing, . . . shall be safely invested for my said daughter Emaline's benefit, in such securities as her said trustees shall deem most advisable."

It seems to us that this provision in effect directs a capitalization of the accumulated income to be held on a like trust by the trustees with those of the two principal funds. It can hardly be contended that Emaline was entitled to the whole of this fund during her lifetime, because to concede this would be in direct conflict with the intention of the testator, who knew that she was not able to look after her own comfort and interests, and, consequently, limited the disposition of the income by giving the control to the trustees. To hold that the direction to invest the surplus income for her benefit means that the fund created is the property of Emaline would not harmonize with the obvious intent of the testator, that the two funds and the income thereof are to be managed and controlled by the trustees. The adoption of this view would make the limitation of payment of income to Emaline of no effect, because at the end of each year, in case of unexpended income, she would become the owner of the same, and thus render ineffective the provision that she should receive only so much as was necessary for her maintenance and support. Such a construction would do violence to the plain intention of the testator, for he surely did not contemplate the limitation of the income and also the absolute ownership at one and the same time. In the matter of the petition of Thomas Sergeant, 11 Phila. 8, there was a direction very like this, to invest and accumulate during the lifetime of the *cestui que trust* such sums as might not, in the discretion of the trustees, be necessary for his maintenance and support, and there it was held that the accumulations were illegal.

It has also been argued that this accumulation is not designated as a permanent addition to the *corpus* of the estate, but is merely in the nature of the withholding of income temporarily and for the purpose of providing a fund in the interest of judicious management, and is not within the prohibition of the

3 D. & C.

statute. The cases cited to support this position are Eberly's Appeal, 110 Pa. 95; Hibbs's Estate, 143 Pa. 217; Robertson v. Hatfield, 244 Pa. 84, 91; Spring's Estate, 216 Pa. 529, where the courts have refused to terminate the trust and to order a distribution of the accumulations prior to the death of the *cestui que trust*. This appears to have been done on the theory that they might be necessary for future contingencies, and the intent that it should be so accumulated, but no intent respecting its final disposition, in case it should not be consumed during the lifetime of the *cestui que trust*, may be attributed to testator. In other words, these cases simply determined that the accrued income cannot be interfered with during ·the lifetime of the *cestui que trust:* Neel's Estate, 252 Pa. 394, 412.

The case at bar, it seems to us, is clearly within the rule laid down in Neel's Estate, 252 Pa. 394, which has a good many features similar to the present. In that case the trustees were directed "to apply so much of either principal or income in their charge as in their best discretion they may think proper to and for the maintenance and support of my daughter Adella, . . . that they provide liberally and well for her maintenance and support." This provision, in effect, is virtually the same as the one in the case here, with the exception that there is no direction to invest the surplus income. Mr. Chief Justice Moschzisker, in a very interesting and exhaustive opinion, demonstrated why the increase, amounting to $48,000, constituted unlawful accumulations, in violation of the statute, and passed under the intestate laws to the daughter, Adella Neel. It is expressly held in the Neel case that accumulation is forbidden by the Act of April 18, 1853, ·§ 9, P. L. 503, no less where it results by indirection than where it is expressly ordered, and that where there is income in excess of the needs of the life-tenant, such excess constitutes unlawful accumulations within the provision of the statute.

In the adjudication excepted to, we awarded the unlawful accumulations to the residuary legatees, or their representatives, excepting the deceased *cestui que trust*. In doing this, we adopted accountant's theory that the direction to accumulate the income on the $29,300 legacy, being independent of the residuary estate, all accumulated income fell into the residue; and Emaline's share of the residue having been subject to the same trusts as the special legacy for her benefit, the whole of the accumulations in effect passed to the remaindermen who are the residuary legatees. In this respect, we now think we erred in the distribution. Under the general rule, accumulations on an interest not vested in possession are illegal, and the accumulated income passes to the residuary legatee or devisee, unless the residuary estate itself be the subject of the direction to accumulate, in which case the accumulated income passes under the intestate laws: White's Estate, 8 Dist. R. 33.

The residuary estate here is also the subject of the direction to accumulate. Under the rule, therefore, the latter direction is no less illegal than the one with respect to the special legacy of $29,300 for Emaline's benefit. The beneficiaries of the $29,300 legacy are precisely the same as those of the residue. Thus, if, as the authorities hold, it is illegal to add the accumulations to the principal of the special legacy of $29,300, it is difficult to get away from the conclusion that it is just as illegal to add those accumulations to the principal of the residue, since the residue itself is the subject of the direction to accumulate, and the same persons take it as beneficiaries. To hold otherwise, it seems to us, would be to defeat the purpose of the Act of 1853. For by the mere addition to the will of this residuary clause to receive it, illegally accumulated income specially directed in another part of the will would fall into it, and, passing to the same persons for whom the act forbade its accumu-

lation in a prior clause, it would thus become legalized, despite the fact that the residuary clause itself contains a direction to accumulate. To such a course we cannot bring ourselves to subscribe. Much more in harmony with the spirit of the statute, and as an aid to its effective operation, it seems to us, is to hold that Daniel Boyer, having failed to dispose of these accumulations, died intestate with respect to them, and that they pass under the law to his four children or their representatives, including the personal representative of Emaline Boyer, deceased. Thus, the accumulations will be divided into four shares, of which one goes to the estate of Emaline Boyer, deceased, and eventually passing as her estate to her collateral heirs, would be liable for the payment of the collateral inheritance tax.

The adjudication will be modified and amended to conform with this opinion, and the exception, so far as the distribution of the one-fourth part of the accumulations to Emaline is concerned, is sustained, and as to the balance, it is dismissed.

From Wellington M. Bertolet, Reading, Pa.