## King's Estate.

*Asher Seip*, for petitioner; *E. J.* and *J. W. Fox*, for executor.

STEWART, P. J., June 11, 1928.—This is a citation to the Easton Trust Company, as executor of the last will of William H. King, directing it to use the *corpus* of the estate in its hands to support the petitioner, who is the widow, in the manner in which petitioner and decedent lived at the time of the decedent's death, in accordance with the spirit and true intent of the will of decedent, and that the court should fix the amount to be paid out of the *corpus*, in addition to the income of the estate. The petitioner alleged that she is still decedent's widow; that all the real estate has been sold except one piece which yields an annual rental of $2500; that the amount of the estate above the real estate in executor's hands is $31,591.32; and that her net income is $3250; that decedent expended approximately $10,000 a year; that the income received is insufficient for her support in the manner set forth in the will; and that the executor refuses to apply any of the *corpus* to her support. The answer admitted the income to be approximately $3250; denied that the decedent expended $10,000 a year, and averred that his income did not amount to that much a year; that the board of directors of the trust company acted on petitioner's demand; and that in the exercise of their discretion had refused it; and that the income paid her was sufficient under the terms of the will; that the remaindermen and residuary legatees had notified

the executor that it should not make any payment to the petitioner out of the principal; and that the court had no jurisdiction in this matter; and that the executor is the sole tribunal to decide upon the propriety of payments out of the *corpus*.

Depositions were taken, and the petitioner was examined and cross-examined as to her needs and requirements. At the close of her testimony, she testified that she should have $5000 a year out of the *corpus*, which would make the amount of her requirements for the first year over $8000, and she admitted that she knew year after year the income would be lessened. Upon the argument, this amount was lessened to $6000. Other witnesses were examined, but their testimony does not throw much light on the question involved. The will of the decedent provides: "Third. I give, devise and bequeath the net income of all the rest, residue and remainder of my estate, real, personal and mixed, to my wife Lillian Smith King for and during the term of her natural life, or so long as she remains my widow. Should the net income arising from my estate not be sufficient, in the opinion of my Executor hereinafter named, to comfortably support my said wife in the manner and style in which we are living at the time of my death, then the said Executor may use so much of the *corpus* of my said estate for her support as to the said Executor shall and may seem necessary and proper." The fourth section provides that if his wife remarried, she was to receive one-half of the personal estate absolutely and one-half of the net income from his real estate for life. If she did not marry, at her death all the *corpus* of the estate then remaining was to go to his sister for life, and after her death to her children. In the event of his wife remarrying, one-half of the real estate and one-half of the personal estate was to go to his sister and her children, as above set out. In the seventh clause he commended to his wife the education of his nephew upon the lines which he had discussed with his wife "if her income be sufficient to enable her to do so." In the eighth paragraph he commended to his wife the care of the same sister to whom the property was to go after the death or remarriage of his wife, and "request that, so far as consistent with her income from my estate, she give my said sister such care and attention as she may need in her declining years." In the tenth and eleventh clauses he made certain directions to enable his wife to carry on the business in which he had been engaged.

That the court has jurisdiction appears from Dundas's Appeal, 64 Pa. 325; Orr's Estate, 283 Pa. 476, and McCullough's Estate, 292 Pa. 177, but where the decedent has so plainly conferred the decision of the subject-matter of the present application on the executor, the court ought not to interfere unless the petitioner satisfies the court that the executor is not acting in good faith in refusing to give her anything out of the *corpus*. The burden is on the petitioner, and it is a heavy burden. In the third section of his will, the decedent said that the executor had the right to pass upon the amount needed to comfortably support his wife, and, in the next place, the executor had the right to decide how much of the *corpus* should be used for her support. It is true that in that section he used the words "in the manner and style in which we are living at the time of my death," but it is manifest that the testator had in mind the support of his wife, rather than to lay down a standard which, if the figures given are correct as to what he spent, would exhaust this estate in a few years. In other words, it cannot be supposed that testator intended that his wife should live, even as she testified they lived, for five or six years, and then that she should be penniless for the rest of her lifetime. He intended the income to be for her support. That plainly appears from the seventh clause

when he thought that it might even be sufficient to aid in the education of his nephew, and 'in the eighth clause when he thought that his wife might aid his sister from the income. The whole will shows that the remaindermen were constantly in testator's thought, and while he used the expression "all the *corpus* of my estate then remaining," it must have been his intention that the remainder would be what was left after the executor had exercised its discretion. The exact question does not seem to have been passed on by the higher courts. We passed upon a somewhat similar application in Trust Estate of Theophilus P. Gould et al., 12 Northamp. Co. Repr. 138, the syllabus of which is: "Where testatrix's will created a trust and directed that interest should be paid to certain beneficiaries for their lives, and further provided 'in case of illness or other good and sufficient cause the income or interest should not be sufficient for their proper provision or support, or for the survivor, then I direct that so much of the principal as may be necessary shall be taken for that purpose,' and the beneficiaries request the trustee to pay them certain sums out of the principal, which the trustee refused to do, neither the beneficiaries nor the trustee are the sole judges as to what should be paid. The court will consider whether the application is made in good faith and whether the circumstances of the beneficiaries are such as to equitably induce the court to decree an allowance to carry out the true intent of the testatrix." We also have passed upon a similar matter where the wife had a right to consume the residuary estate. That case was affirmed by the Supreme Court: Fassitt *v.* Seip, 240 Pa. 406. In that case, Mr. Justice Elkin quoted with approval the following: "What was said by Mr. Justice Mitchell in Tyson's Estate, 191 Pa. 218, 226, is applicable here: 'The extent of the widow's consumption of the estate was within her own control. Her decision was without appeal, but it must have been honestly reached in accordance with the purpose the testator intended, and not merely colorably to defeat his will. She had power to carry out his intentions by sale, transfer and consumption of the proceeds in such a way as to leave nothing at her death. But a transfer with intent not to consume for herself, but to preserve for others after her death, and to change the beneficiaries after her from those chosen by her husband to others of her own selection would be a fraud on the testator and his will. This is a question of fact to be determined by the court on the circumstances and the evidence in each case as it arises.' " In La Bar's Estate, 181 Pa. 1, the testator directed that certain bank stock should be held in trust for his housekeeper "so that she receive all the income or dividends arising or accruing therefrom, immediately from and after my death, so long as she remain unmarried, and if at any time or times she needs any part of the principal of the stock, she is at liberty to receive it for her support and maintenance. If any part of said stock is remaining at her death or marriage, it shall be distributed as is hereinafter provided in relation to my residuary estate." On page 6, Mr. Chief Justice Sterrett said: "This latter provision was evidently intended to provide for possible temporary exigencies that might arise and make it necessary to supplement, for the time being, her regular annual income, which he evidently considered would be ordinarily sufficient for her needs. It was never intended to be used as a pretext for demanding and appropriating to her own use the entire *corpus* of the trust. Nothing could have been further from the testator's intention than that his beneficiary should, within less than three years' after his decease, have the right to capriciously and arbitrarily demand from his executors an absolute transfer to herself of all the bank stock constituting the *corpus* of the trust created solely for the purpose of providing an annual income for her comfortable 'support

and maintenance.' If such an unconscionable demand as that were acceded to, it would not only defeat the manifest purpose of the testator in creating the trust, but it would operate as a fraud upon his residuary legatees. It cannot be seriously asserted, nor is there a particle of evidence to show, that at any time since the death of her benefactor has the income of the trust been insufficient for the appellee's comfortable support and maintenance in the style in which she had been accustomed to live." Again, he said, on page 7: "If she hereafter demands any portion of the *corpus*, on the ground that she needs it, the trustees and court below should be satisfied that the alleged necessity therefor really exists. In other words, if it does not appear that such claim is made in good faith and is grounded on reasonable necessity it should not be allowed. In no other way can the intention of the testator, as we understand it, be fully and fairly carried out, and the respective interests of all parties be properly protected." It will be perceived that that case is unlike the present case, because in the present case the testator makes the executor the judge, while in that case the beneficiary was made the judge. See, also, Watson's Estate, 241 Pa. 271, which seems to be the latest discussion of the subject. Having in mind the rules that were applied by the Supreme Court in above cases, and having in mind the amount of this estate, and having carefully read all the evidence, we feel that petitioner has failed to make out a case that would cause us to interfere with the discretion of the executor or to add anything more to the annual income.

And now, June 11, 1928, citation is discharged, at the costs of the petitioner.
From Henry D. Maxwell, Easton, Pa.