## Seacrist Estate.

Argued May 25, 1949. Before MAXEY, C. J., LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Arthur Markowitz* and *Markowitz & Liverant,* for appellant.

*George Hay Kain,* with him *Walter B. Hays, Daniel K. Medill,* in propria persona, and *Kain, Kain & Kain,* for appellees.

OPINION BY MR. CHIEF JUSTICE MAXEY, June 24, 1949:

This is an appeal from the decree of the Orphans' Court of York County, dismissing the petition of James R. Seacrist asking the court to compel the York County National Bank, Successor Trustee of a trust created by the last will and testament of Adam W. Seacrist, father of the appellant, to resume payments to petitioner of periodic allowances from the corpus of the trust.

Adam W. Seacrist died on April 22, 1918, leaving a widow and three sons. There was duly probated his will dated January 16, 1917, with a codicil dated May 1, 1917. The widow died on June 1, 1944. The testator directed his executors to pay $30,000 of his personal estate to the Guardian Trust Company (subsequently

replaced by the York County National Bank), in trust, and to pay the income to his wife, Rosa H. Seacrist, for life. On the death of his wife he directed the Trustee to divide the $30,000 into three funds of $10,000 each for the benefit of each of his three sons, specifically naming them, including appellant, to pay the income to each of them for life, subject to spendthrift trust provisions, and on the death of the three sons to pay the principal to the surviving children of the deceased sons, as a class and not by name, per stirpes, and in the event of no surviving children to the residue. He left the residue to his executors to pay the income to his wife for life and on her death to those entitled thereto under the Intestate Laws. The codicil of May 1, 1917, altered the trust of $10,000 for each of his sons. It directed that in the event that any of the sons should become disabled or in any manner incapacitated, the trustee may pay from the principal of any of said trust funds to such son or sons who may be disabled or incapacitated, such sum or sums as in the opinion of the trustee should be necessary to support such disabled or incapacitated son or sons, such sum or sums so paid from any of said principal funds not to exceed, however, the gross sum of $1,000 per year, and such payment or payments not to be made by the trustee except upon presentation to the trustee of a certificate of a reputable physician that the said son or sons is so disabled or incapacitated.

Two sons, J. Russell Seacrist and Adam W. Seacrist, objected to the payment of any money to James R. Seacrist from the corpus of the $10,000 trust fund. On September 20, 1944, appellant filed a petition with the court below, joined in by the trustee, asking that the court authorize the trustee to pay appellant $1,000 for the ensuing year because of his incapacity for work, as evidenced by the certificate of a reputable physician. On the same day the court below ordered the payment in quarterly installments.

On September 15, 1945, appellant petitioned for a renewal of the order for an additional year. Here again his petition was joined in by the trustee, and again the court ordered payment of $1,000 for the ensuing year in quarterly installments.

On June 10, 1947, the trustee made the last payment under order of the court below. The court did not renew this second order, but the trustee continued to pay appellant five quarterly installments, amounting to $1250 in all, the last of which was made on September 25, 1947. Thus a total of $3250 was paid—$2,000 under court order and $1250 by the trustee in the absence of a court order. The trustee refused to make the quarterly payment in December of 1947 because of receipt of a letter dated December 10, 1947 from counsel for the children of appellant, namely, James Russell Seacrist and Adam W. Seacrist, objecting to such payments from the principal of a fund in which they claimed a remainder interest. Thereafter, on January 9, 1948, appellant filed the petition, from the dismissal of which this appeal is taken, alleging that the trustee abused its discretion by refusing to continue payments to appellant.

The court below held two hearings, one on June 29, 1948 and at the close of which it was agreed by counsel of record that appellant should submit himself to an examination by a neutral physician. Thereafter, appellant submitted himself to Dr. Conroy on July 10, 1948, and after staying there two hours left without the doctor setting any date for his return. The second hearing took place on July 20, 1948 and was given over largely to an examination of appellant with respect to his not having completed the physical examination with Dr. Conroy and as to what property appellant owned. Subsequently, the parties stipulated the consideration which appellant and his brothers received from the sale of their father's real estate upon the death of their mother.

The court below correctly decided this case. In doing so it said: "The right to advancements out of principal is not absolute or without limitation. This right, by the clearly express terms of the codicil, is dependent (1) upon the petitioner's disability or incapacity for work by illness or otherwise, (2) the presentation to the trustee of a certificate of a reputable physician that the petitioner is so disabled and incapacitated, and (3) the opinion of the trustee that the sum or sums paid shall be necessary to support and maintain the petitioner. It is to be noted also that, under the 3rd item of the will, both income and principal of the trust, are subject to spendthrift limitations. . . . We hold that it was the intention of the testator, as expressed in the codicil, that the petitioner is not entitled to any advancements out of principal of trust for his support until he, in good faith, and not for the mere purpose of defeating the testator's intention, satisfies the trustee that he is dependent upon such advancements and that his necessities require that they be made for that purpose. To know the quality and quantity of petitioner's private estate becomes very material in order to determine his good faith and his necessities. . . . The primary question before the Court is, did the trustee abuse its discretion by discontinuing payments from principal to the petitioner? It did so, because it was notified by the two sons that the petitioner was able to support himself, and that there was no necessity for dipping into the principal of the trust for that purpose. . . . At the hearing the petitioner was uncooperative with the purposes of the investigation. He refused to submit to a complete physical examination by a neutral, competent physician. He was reluctant to testify, evasive in his answers, and, in several instances, refused to answer questions, and insisted that his financial affairs were his own personal business. He did testify that he was unable to pursue gainful employment, unable to support himself, and had no income

other than from this trust, but he failed completely to explain his use of, or what he had done with his substantial inheritance so recently acquired. His demeanor on the witness stand was not conducive to inspire confidence that his demands were made in good faith, but rather as a pretext for appropriating the corpus of the trust to his own use and thus evade the manifest purpose of his father's will. Giving full consideration to the present facts as we have found them, we are not convinced that the trustee abused its discretion at this time in refusing to continue further payments out of principal to the petitioner. Our conclusion is without prejudice to the rights of petitioner in the future upon showing a change of circumstances." In support of its position the court cited these cases: *LaBar's Estate*, 181 Pa. 1, and *Tyson's Estate*, 191 Pa. 218.

The court dismissed the petition and the citation awarded thereon and dismissed the prayer and directed the costs to be paid out of the trust fund.

The decree of the court below is affirmed. Costs to be paid out of the trust fund.