Henry Laussat Geyelin CLEMENT

v.

Francis R. SMITH, Collector of Internal Revenue, First District of Pennsylvania.

Civ. A. No. 14420.

United States District Court
E. D. Pennsylvania.

Sept. 3, 1958.

Samuel H. Levy, Bernard Wolfman, Myles H. Tanenbaum (Wolf, Block, Schorr & Solis-Cohen), Philadelphia, Pa., for plaintiff.

Harold K. Wood, U. S. Atty., Philadelphia, Pa., Charles K. Rice, Asst. Atty. Gen., and James P. Garland, Lyle M. Turner, David H. Frazer, Attys., Dept. of Justice, Washington, D. C., for defendant.

LEAHY, District Judge.

Plaintiff sues to recover $14,753.18 and interest which represents gift taxes paid for 1945. The question is whether the taxpayer made a taxable gift of a life estate to his father when he transferred to a trust previously created securities in the amount of approximately $245,000.[1] The statutes and apposite regulations are found in the margin.[2]

Plaintiff created the original trust on January 19, 1937. The corpus was $17,277.20. Additions were made to the trust in 1937 and 1938. Gift tax returns were made for these years. The exact amount added to the trust in 1945 was $245,308.32. No gift tax return was made.[3] Pursuant to request, on October 22, 1945, taxpayer filed a blank gift tax return. He denied tax liability for the addition to the trust in 1945.

Plaintiff was 24 when he established the trust. He named as trustees his father (Charles Francis Clement) and Girard Trust Company. The trustees had wide powers of management. The net income was to be accumulated during the life of the settlor. The trustees in their uncontrolled discretion whenever they considered it advisable and necessary were to pay any of the accumulated income for the maintenance and support of the taxpayer's father for his lifetime. Upon the father's death the trust was to terminate. If the settlor should predecease his father, then upon the father's death the trust was to terminate and the corpus plus accumulated income would go to those

---

1. Stip. Pars. 1, 2, 6, 7, 19a; Exh. F, G, and H.

2. Internal Revenue Code of 1939:
"§ 1000. Imposition of tax.
\* \* \* \* \*
"(b) The tax shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible; but, in the case of a nonresident not a citizen of the United States, shall apply to a transfer only if the property is situated within the United States. In the case of such a non-resident who is not engaged in business in the United States at the time of a transfer of obligations issued by the United States, the tax shall apply in respect of any such obligations only if issued on or after March 1, 1941." (26 U.S.C.1952 ed., Sec. 1000.)
Treasury Regulations 108, promulgated under the Internal Revenue Code of 1939:
"Sec. 86.2. *Transfers Reached.*—(a) *In General.*—The statute imposes a tax whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible. \* \*
\* \* \* \* \*
"Sec. 86.3. *Cessation of Donor's Dominion and Control.*—The tax is not imposed upon the receipt of the property by the donee, nor is it necessarily determined by the measure of enrichment resulting to the donee from the transfer, nor is it conditioned upon ability to identify the donee at the time of the transfer. On the contrary, the tax is a primary and personal liability of the donor, is an excise upon his act of making the transfer, is measured by the value of the property passing from the donor, and attaches regardless of the fact that the identity of the donee may not then be known or ascertainable.
"As to any property, or part thereof or interest therein, of which the donor has so parted with dominion and control as to leave in him no power to change the disposition thereof, whether for his own benefit or for the benefit of another, the gift is complete. But if upon a transfer of property (whether in trust or otherwise) the donor reserves any power over the disposition thereof, the gift may be wholly incomplete, or may be partially complete and partially incomplete, depending upon all the facts in the particular case. Accordingly, in every case of a transfer of property subject to a reserved power, the terms of the power must be examined and its scope determined. \* \* \*"

3. Stip. Pars. 7, 8; Exh. H.

persons named in the settlor's will. If he died intestate, then the property was to go to his heirs. The trust was irrevocable.

Taxpayer's father was born January, 1884 and was 62 in 1945 when the addition to the trust was made. Then, his life expectancy was 13.27 years.

Taxpayer's deficiency was determined in 1948–49 in the amount of $11,988.05 plus interest of $2,265.13. While $245,308.32 was added to the trust in 1945, the Commissioner merely included as a taxable gift $86,157.36 which was the value of the life estate to which taxpayer's father was entitled. Plaintiff paid. His claim for refund was disallowed. The present suit followed.

1. Plaintiff argues the trust reserved to himself the entire beneficial interest and that his father had merely a remote interest, i. e., if he were ever in need. Admittedly, if taxpayer's father had full liberty to enjoy income and to ignore the rule of the trust of "advisability and necessity" for "comfortable maintenance and support" then a gift would have occurred even though the actual income were never received and used by the father. In Commissioner of Internal Revenue v. Ellis' Estate, 3 Cir., 252 F.2d 109, 110, the decedent's widow was a beneficiary. She was to receive income as she should "require" and "she, and she alone, shall be the judge of how much shall be required and the same shall be paid to her monthly * * *." The Court of Appeals held the widow did not have "an unlimited power to consume the corpus"—a requirement if the trust qualified as a marital deduction under the estate tax law. Chief Judge Biggs said:

"The law of Pennsylvania must be applied to determine what was the nature of the power Mrs. Ellis possessed * * * we think that there can be no doubt that under that law the power to 'consume' the corpus of the estate for herself was one to be exercised by her 'in good faith' * * * and 'honestly and fairly' * * * The courts of Pennsylvania have demonstrated watchfulness to make sure that the donee of a power does not exercise it to deplete the estate 'for the mere purpose of defeating the testator's intention or of preferring certain heirs or beneficiaries'."

In Funk v. Commissioner, 3 Cir., 185 F. 2d 127, 128, the taxpayer as trustee could "in her discretion to pay all or a part of the net income annually to me (her husband, the settlor) or to herself, in accordance with our respective needs, of which she shall be the sole judge, and to accumulate and add to the principal the balance of such income, if any." The Commissioner sought to tax the entire income to the trustee as she had sole control over the income. The Court of Appeals rejected the Commissioner and held unless the income was actually distributed it was to be taxed to the trust for any other conclusion would be to ignore the "needs" in the trust. Judge Kalodner wrote:

"The authorization to the trustee to act as the 'sole judge' did not convey the trust income to her alone. To the contrary, only upon a determination of 'needs', however that term may be defined, was she authorized to exercise her discretion in the matter of distributions."

The government contends that the father's "need" must be determined by looking exclusively at the trust writing itself to determine the father's resources. There are many things about the tax decisions which are not real. This is such a case where the facts and the law will not add to that particular judicial literature. Unless the standard of necessity is to be ignored in the trust provisions, the "needs" of a beneficiary who can participate is only when need is established; there must of necessity be an examination of such person's complete resources outside the frame of the trust. In Pennsylvania, the beneficiary's requirements are determined by looking at the trust and, also, examining the beneficiary's total financial resources. In re Seacrist's Estate, 362 Pa. 190, 194,

66 A.2d 836.[4] The paper record indicates the father's wealth. He is worth $700,000. He has an income for life of $30,000 in addition to his asset worth. The son-settlor has been paying the income taxes from the trust. Both the Commissioner and plaintiff-taxpayer agreed by retention of his beneficial interest the income of the trust is accumulated to plaintiff. Thus, the income is neither taxable to the trust as a separate tax entity nor to the father. It is includible to plantiff's gross income under §§ 22(a), 167(a) (1) and (2) of the Internal Revenue Code of 1939, 26 U.S.C. §§ 22(a), 167(a) (1, 2). As to the father it has been said "until that discretion has been exercised the *cestui que trust* has nothing." Keyser v. Mitchell, 67 Pa. 473.

2. Gift taxes are imposed on transfer of property which is beyond recall. Justice Cardozo said (Burnet v. Guggenheim, 288 U.S. 280, 286, 53 S.Ct. 369, 371, 77 L.Ed. 748) the gift tax reaches only those "transfers of the title that have the quality of a gift, and a gift is not consummate until put beyond recall." The government assesses the tax, here, as if plaintiff-taxpayer, gave to his father an absolute vested life interest to get all income from the trust. The bald fact is: there is a gift of income only when exigency of fact will support the trustees' determination the limited circumstances and the rule of the prescribed provisions come into play. An aside fact is the father himself gave $80,000 to the trust in 1946, a year after the critical tax year in question, which looks at confirmation the trust was basically settled for the son's benefit, and so regarded by both father and son. In fact, the father paid a gift tax on this particular corpus addition for the son's benefit. It appears settlor's trust was no more than to permit payments of such income in the future upon the happening of a remote contingency, for, in any event under Pennsylvania law, the son was required to support his father if he was in "need." P.L. 2045, § 3, as amended, 62 P.S. § 1973(a). Here there is a declaration by a son acknowledging legal responsibility. This is hardly an outright gift of income for life. It is difficult to bring into legal focus a theory a life estate has been gift-transferred, when settlor pays the income tax on that which he is said to have given away. Noted, too, is plaintiff-taxpayer will be required to pay an estate tax on the full value of the corpus without reduction of accumulated income which the father has never received. Gramm's Estate v. Commissioner, 17 T.C. 1063.

3. There will be a short pause to consider the obviously subsidiary point that if a real gift was made, whether the life estate interest was so conjectural and remote as to be incapable of tax valuation. The life estate was valued by capitalizing the corpus at 4%. Wealth and income of father shows probability of his receiving accumulated income at the nil point of speculative thought. As Justice Brandeis suggested (Humes v. United States, 276 U.S. 487, 494, 48 S.Ct. 347, 348, 72 L.Ed. 667) "neither taxpayer, nor revenue officer—even if equipped with all the aid which the actuarial art can supply—could do more than guess at the value of this contingency."

McHugh v. United States, 142 F.Supp. 927, 135 Ct.Cl. 520, came near to this particular problem which provided for "essential needs." Since payments were

---

4. Seacrist is declarative of Pennsylvania law: see, In re La Bar's Estate, 181 Pa. 1, 37 A. 111. On the question whether the beneficiary's entire resources are to be considered, defendant relies on Christy's Estate v. Commissioner, 8 T.C. 862. But there the Tax Court assumed under Pennsylvania law only the income from the trust would be used to determine the life tenant's "necessity." This assumption was based on In re Crane's Estate, 174 Pa. 613, 34 A. 348, and In re Grady's Estate, 34 Pa.Dist. & Co.R. 143. But, the fact is neither Crane nor Grady have ever been cited since in a Pennsylvania opinion. Since In re La Bar's Estate and Seacrist the Tax Court's assumption as to the Pennsylvania law appears to be mistaken.

conditional and limited, there was no gift. The case at bar has no controversy on the facts as to need. The facts are stipulated. There never has been need by the father-beneficiary, none exists now, and it looks none ever will. Since the father here is wholly unlikely to seek the rule of the trust with Girard's consent, there is only an astronomical speculation he will invade accumulated income. Compare age and financial stature of plaintiff's father. Possibility of receiving accumulated income is so remote as to be negligible. That no tax gift can be charged is supported in Nemerov Estate v. Commissioner, T.C. Memo 1956–164. Neither an alleged taxable nor a Commissioner should guess at the value of a palpable contingency. There is, at best, too much of the amorphous about the tax laws.

As the paper record includes no contested findings of fact, the facts here stated control. The paper record speaks for itself. Here, the rule of law is a life estate is without any present reality.

The findings of fact have been stated. Any additional ones are stipulated. Judgment should be for plaintiff, with interest, according to the conclusion of law reached here. An order should be submitted.